### Pamela G. LOWREY,

### v.

### EXXON CORPORATION, Exxon Company U.S.A., American Institute for Drug Detection, and Employees Federation of Exxon Company U.S.A. (Eastern Division/Offshore Division).

### Civ. A. No. 91–626–B.

United States District Court,
M.D. Louisiana.

Jan. 7, 1993.

---

645

Stephen A. Dixon, Baton Rouge, LA, for
Pamela G. Lowrey.

Marie Healey, TA, Sarah Voigt, Jeanne Cresson, Sean Dawson, and Maria Cangemi, New Orleans, LA, for Exxon Corp.

Christopher Matchett, Brena Verbois, Baton Rouge, LA, and Douglas Neagli, Houston, TX, for Exxon Co. USA.

Marie Healey and Sarah Voigt, New Orleans, LA, for Employees Federation of Exxon Co. USA.

## RULING ON EXXON AND THE FEDERATION'S MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by Exxon Corporation and Exxon Company, U.S.A., an unincorporated division of Exxon Corporation (both referred to hereinafter as "Exxon") and the Motion for Summary Judgment of the Employees Federation of Exxon Company, U.S.A. ("the Federation"). For reasons which follow, defendants' motions for summary judgment are granted.

### I. The Facts

Pamela Lowrey submitted to a urinalysis test November 8, 1989, as part of a request of her employer, Exxon. The test was positive and the urine was found to contain 23 nanograms of cannabinoids/milliliter. On November 29, 1989, plaintiff was suspended from work. After reviewing the results of the test, Exxon discharged Lowrey on December 6, 1989, for violation of the Employee Alcohol and Drug Use Policy.

Under the terms of the collective bargaining agreement (CBA), Lowrey had a right to timely file a grievance contesting her termination—individually or through the union. Plaintiff chose to pursue her grievance through the union. After re-

viewing the results and the chain of custody of the sample, the Federation decided not to pursue the grievance. Plaintiff has not disputed the accuracy of the test results or the chain of custody. She does claim that passive inhalation of marijuana smoke caused her to test positively.[1]

Lowrey claims that the Federation breached its duty of fair representation by not adequately pursuing or investigating her grievance. She also claims that Exxon breached the CBA by requiring her to undergo drug testing under a policy which had not been properly negotiated. Finally, plaintiff contends that Exxon violated the CBA by discharging her without just cause.

Plaintiff also asserts several state law claims based on invasion of privacy because she was subjected to a drug test and the methods used to perform the test, defamation, public portrayal in a false light, and negligent infliction of emotional distress based on the Federation's handling of the test results.

### II. Jurisdiction

Defendants timely removed this suit to federal court based on the Labor Management Relations Act of 1947, 29 U.S.C. Section 185(a). Although plaintiff did not plead a federal statute in her state court petition, defendants claim this case falls under Section 301 of the Act.

A claim based on Section 301 for breach of contract and breach of fair representation comprises two distinct causes of action: one against the employer and one against the union.[2] The two causes of action are "inextricably interdependent," and have come to be known as a "hybrid Section 301 suit."[3]

In a "hybrid" Section 301 suit, the employee may elect to sue both the union and

---

1. The complaint alleges that shortly before plaintiff was tested, she had attended a party. While at this party, plaintiff claims she and her daughter used a bathroom in a house trailer where several individuals were smoking marijuana. The confined nature of the trailer allegedly caused plaintiff to inhale a concentration of marijuana smoke which was present in the trailer.

2. *Daigle v. Gulf States Utilities Co. Local No. 2286,* 794 F.2d 974 (5th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986).

3. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

the employer, or only one of the parties. However, the employee carries the same burden of proof, regardless of who is sued. It is necessary for the employee to show that the union breached its duty of fair representation and that the employer breached the CBA.[4]

The Court finds that Exxon's motion for summary judgment should be granted. Therefore, plaintiff cannot maintain a "hybrid" Section 301 claim without showing Exxon breached the CBA.

### III. Breach of the CBA by Exxon

 It is clear that Exxon had the authority to discharge Lowrey for a positive test result under the drug policy. Lowrey contends that since the drug policy was not properly approved by the union membership, it never became part of the CBA.[5]

The Court finds that the drug policy was properly incorporated into the CBA.

#### A. The CBA and the union constitution.

Article VII, Section 36 of the Constitution of Employees Federation of Exxon Company allows an elected Council or the union Executive Committee through collective bargaining to negotiate and execute written agreements and contracts with the employer governing wages, hours, and working conditions. However, it is necessary that such agreements be submitted by secret ballot to all dues paying members for approval. No contract or agreement is effective or binding until employees ap-

prove such by a majority vote of the employees participating in the vote. Plaintiff relies on this provision in support of her contention that the drug policy was not properly adopted by the union.

However, Article II of the CBA provides that the agreement is the sole and entire agreement between the parties and supersedes all prior agreements. The CBA states that before any amendment becomes effective, it shall be reduced to writing and signed by appropriate management personnel and an authorized representative of the Federation.

The drug policy was negotiated between the union and management, reduced to writing and signed by the company and the union.[6] The drug policy was implemented in November of 1989. Employees were "informed" of this policy and "required" to sign a form acknowledging they understood it.[7] However, the employees never voted to accept or reject the drug policy.

Plaintiff contends that because the union constitution is incorporated in the CBA, the company is bound by Article VII, Section 36 of the constitution which requires a vote of the union membership.

A union constitution is a contract between a union and its members. The CBA is a separate contract between the union and an employer. A breach of the constitution has been held to be an intra-union affair over which Section 301 does not confer jurisdiction unless the alleged violation

4. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). State courts retain concurrent jurisdiction to adjudicate such claims. *Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 298–99, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 513, 82 S.Ct. 519, 526, 7 L.Ed.2d 483 (1962).

5. However, even assuming the policy did not become part of the CBA, Exxon could still discharge Lowrey "for just cause." Lowrey contends the company did not have good cause for discharge because her passive inhalation explanation was rejected and she was not allowed to take another test.

6. Plaintiff relies on *Johnson–Batemen Co.,* 295 NLRB 180, 131 LRRM (BNA) 1393 (1989) for

the proposition that the drug policy must be properly negotiated. This court agrees that the drug policy was a proper subject of negotiation. However, the *Johnson–Bateman* holding is not relevant to this dispute. In that case, the NLRB found that an unfair labor practice was committed by failing to engage in bargaining on a mandatory bargaining issue. In this case, the company and the union agreed that the issue should be negotiated and did so.

7. Affidavit of Norman Hill. Lowrey signed one of these forms acknowledging: (1) she read and understood the policy; (2) knew she would be required to participate in random drug testing; and, agreed to inform the company of any substance abuse related treatment violations of the law. Plaintiff also acknowledged that the failure to comply with the drug policy could result in discipline, including termination.

creates a threat to industrial peace or has a significant impact upon labor-employer relations.[8]

Federal courts are generally reluctant to interfere in the internal affairs of a union.[9] The United States Supreme Court recently recognized in *Wooddell v. Int'l B'hd of Elec. Workers* that union constitutions are an important form of contract between labor organizations.[10] Thus, a union constitution may form the basis for a Section 301 claim between unions.[11] However, *Wooddell* applies to lawsuits between unions based on the union constitution. *Wooddell* does not hold that a member of a union can maintain a Section 301 action against the employer based on a provision in the union constitution.

To overcome this prohibition, plaintiff suggests that the union constitution is incorporated into the CBA. The Court agrees that an argument could be made that the constitution was implicitly adopted by Exxon. The Index to the CBA includes the Constitution and Bylaws of the union and both documents were distributed as one document. However, it is not necessary for the Court to decide this question because Section 44 of the union constitution (which is titled "Amendments"),[12] states that properly approved agreements may modify the union constitution. The CBA was properly voted upon and adopted by the union membership. The CBA does not require a membership vote of approval on terms which are properly negotiated by union representatives and management.

Thus, the Court finds that the union constitution was modified by the CBA. Therefore, a union vote was not required on the drug policy in order for the policy to be properly adopted. Based on the facts and law, the Court finds that the drug policy was properly adopted and was effective at the time plaintiff was discharged for violation of the policy.

The drug policy allows Exxon to discipline an employee who fails a drug test and to terminate employment if required. The drug policy does not impose an obligation on the company to investigate why the employee tested positive.

Under the CBA, Lowrey had a right to pursue her grievance with or without the assistance of the union. She chose to pursue her grievance through the union. Had plaintiff chosen to pursue her claim individually, she would have been entitled to as many as three hearings. Exxon cannot be held responsible for her personal decision to pursue her grievance through the union instead of individually as permitted by the CBA.

The Court further finds that even if the drug policy was not properly adopted, the company could still terminate Lowrey for "just cause." It is clear that plaintiff tested positive for marijuana. Exxon was under no duty to look beyond the test results after being satisfied with accuracy of the tests. Plaintiff did not dispute the accuracy of the drug test results. Exxon did not act unreasonably in releasing an employee who tested positive for drugs when the accuracy of the results was not at issue.

**8.** *Alexander v. Int'l Union of Operating Eng'rs,* 624 F.2d 1235 (5th Cir.1980); *Hotel and Restaurant Employees, Local 400 v. Svacek,* 431 F.2d 705 (9th Cir.1970); *1199 D.C., Nat'l Union of Hospital & Health Care Employees v. Nat'l Union of Hospital & Health Care Employees,* 533 F.2d 1205 (D.C.Cir.1976); *Parks v. Int'l B'hd of Elec. Workers,* 314 F.2d 886 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963).

**9.** *Stelling v. Int'l B'hd of Elec. Workers,* 587 F.2d 1379 (9th Cir.1978), cert. denied by *Darby v. Int'l B'hd of Elec. Workers,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *United B'hd of Carpenters & Joiners, Local Union No. 657 v. Sidell,* 552 F.2d 1250 (7th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977);

*Smith v. United Mine Workers of America,* 493 F.2d 1241 (10th Cir.1974); *Studio Elec. Technicians v. Int'l Photographers of Motion Picture Industries,* 598 F.2d 551 (9th Cir.1979); *Parks,* 314 F.2d 886; *Trail v. Int'l B'hd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 542 F.2d 961 (6th Cir.1976); *1199 D.C.,* 533 F.2d 1205.

**10.** *Wooddell v. Int'l B'hd of Elec. Workers, Local 71,* —— U.S. ——, ——, 112 S.Ct. 494, 500, 116 L.Ed.2d 419 (1991).

**11.** *Id.*

**12.** The Court notes that none of the parties pointed to this section in their briefs.

In short, plaintiff was terminated for just cause by Exxon under the facts of this case.

For the above reasons, the Court finds that Exxon is entitled to summary judgment as a matter of fact and law.

## IV. Breach of fair representation claim

■ Plaintiff contends the union breached its duty of fair representation because it did not: (1) pursue her grievance; (2) properly investigate her claim; and, (3) communicate with Lowery concerning the status of her claim. Each of these claims will be considered separately.

■ An employee does not have an absolute right to have a grievance filed or to have a grievance taken through the arbitration process. Unions are generally accorded broad discretion in dealing with grievances.[13] Thus, the failure of a union to process a meritorious grievance does not necessarily rise to a breach of the duty of fair representation.[14] When the decision not to file a grievance on behalf of an employee is based on a reasonable belief that the employee will not prevail on the merits of the grievance, a union does not breach its duty of fair representation.

■ In order to establish a claim for unfair representation, the plaintiff must show that the Federation's conduct was arbitrary, discriminatory, or in bad faith, or that the Federation discharged its duties in a perfunctory manner.[15] "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to com-

plete good faith and honesty in purpose in the exercise of its discretion."[16]

In support of her claim, Lowrey claims that Davis, the union representative, never met with her to discuss her explanation for the test results. Davis contends he spoke to the plaintiff numerous times on the telephone and invited her to provide him with evidence to support her grievance. Even if Davis failed to meet with plaintiff, such action does not provide sufficient evidence to establish that the union did not investigate her claim adequately.[17]

The affidavits of Norman Hill, the human resources manager for Exxon, and Davis indicate the Federation concluded the test results were accurate and a proper chain of custody had been followed. As noted earlier, the plaintiff has never disputed the accuracy of the results or the chain of custody. Other than the statement in Davis' affidavit that "research and review of all available evidence" showed plaintiff's alleged passive exposure was insufficient to cause her test result, the defendants do not set forth any other evidence to support their conclusion that plaintiff could not have been the subject of passive inhalation. The nature and extent of the "research and available evidence" Davis reviewed was not submitted by defendants in support of their motion, nor was it presented during oral argument. Thus, it is impossible for the Court to determine whether Davis' conclusion was arbitrary, discriminatory, in bad faith, or perfunctory.[18]

In opposition to defendant's motion for summary judgment, plaintiff has submitted the ruling of an administrative law judge

---

**13.** *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967); *Bache v. American Tel. and Tel.,* 840 F.2d 283, 289 (5th Cir.), cert. denied by Bankston v. American Tel. & Tel. Co., 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988); *Hammons v. Adams,* 783 F.2d 597, 601 (5th Cir.1986).

**14.** *Sipes* 386 U.S. at 192–93, 87 S.Ct. at 917–18; *Turner v. Air Transport Dispatcher's Ass'n,* 468 F.2d 297, 299 (5th Cir.1972).

**15.** *Sipes,* 386 U.S. 171, 87 S.Ct. 903; *Wells v. Southern Airways, Inc.,* 616 F.2d 107 (5th Cir.),

cert. denied, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 78 (1980).

**16.** *Bache,* 840 F.2d at 290; *Humphrey v. Moore,* 375 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964); quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

**17.** *Landry v. The Cooper/T.Smith Stevedoring Co., Inc.,* 880 F.2d 846, 853 (5th Cir.1989).

**18.** In an answer to Plaintiff's interrogatories, the Federation does submit that Davis consulted Zeese, *Drug Testing Legal Manual, Guidelines and Alternatives.*

on her claim for unemployment benefits. While this decision does bind the Court, it does provide insight into the reasonableness of Davis' conclusion.

When determining whether an employee is eligible for unemployment benefits, an employee's claim of passive inhalation is not ruled out if the results show under 50 nanograms per milliliter.[19] Plaintiff's level was 23. nanograms.

Thus, in determining whether an employee is eligible for unemployment benefits, the Louisiana Legislature does not rule out passive inhalation as a defense until the test result level reaches 50 nanograms per milliliter. Considering this standard, and without any evidence or research supporting Davis' conclusion, a genuine issue of material fact exists concerning whether the Federation's decision not to pursue arbitration was arbitrary, discriminatory, in bad faith, or its duties to plaintiff were discharged in a perfunctory manner.

■ Neither negligence nor mistake in judgment is enough to support a claim that the union acted in an arbitrary or perfunctory manner.[20] A claim that a union acted "perfunctorily" requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention.[21] The Seventh Circuit has found perfunctory treatment where no attempt was made to find witnesses to an incident or obtain relevant records.[22] The court noted in that case that the union's duty to investigate is especially important in discharge cases. The Ninth Circuit found arbitrary treatment where the union lacked ample basis for assessing the merits of a grievance.[23] That court also noted that the Union needed to exercise special care in handling the petitioners' grievance because they concerned discharges, the most serious sanction an employer can impose.[24] Defendants have failed to provide any information about how Davis concluded the union would not pursue the grievance. Although the union is granted a great deal of deference in determining whether to pursue a grievance, a material issue of fact exists on whether the union's decision in this case was handled in a perfunctory manner, particularly when the Court considers the evidence set forth by plaintiff in her opposition to the motion for summary judgment.

The union also has a duty to clearly and fully communicate its decision to the employee on whether to pursue a claim without prejudicing other strong interests of the employee. The failure to perform a ministerial act, such as informing Lowrey of the union's decision in a clear and timely manner, may be unfair representation.[25] Davis claims he called Lowrey to inform

**19.** La.R.S. 23:1601(10)(c)(v) (West Supp.1991). When the ruling was made in January 1990, the legislature had just reduced the standard from 100 nanograms/ml to 50 nanograms/ml. When the test was taken the effective level was 100 nanograms/ml. La.R.S. 23:1601(10)(c)(v) says:

> Test results which do not exclude the possibility of passive inhalation of marijuana may not be used as a basis for disqualification under the paragraph. However, test results which indicate that the concentration of total urinary cannabinoids as determined by immunoassay equals or exceeds 50 nanograms per milliliter shall exclude the possibility of passive inhalation.

Acts 1990, No. 957, § 1.

**20.** *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir.1982).

**21.** *Coe v. United Rubber, Cork, Linoleum and Plastic Workers of America*, 571 F.2d 1349 (5th Cir.1978). Other courts also have attempted to define "perfunctory." *Mitchell v. Hercules Inc.*, 410 F.Supp. 560, 568 (S.D.Ga.1976), ("to do it merely to get through or rid of the matter; as a matter of routine and for form's sake only; without interest or zeal."); *Ethier v. U.S. Postal Service*, 590 F.2d 733, 736 (8th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979), ("without concern or solicitude; indifferent.").

**22.** *Miller v. Gateway Transp. Co., Inc.*, 616 F.2d 272 (7th Cir.1980).

**23.** *Tenorio v. N.L.R.B.*, 680 F.2d 598 (9th Cir. 1982).

**24.** *Id.* at 602, citing *Griffin v. Int'l Union, United Auto., Aerospace & Agricultural Implement Workers*, 469 F.2d 181, 183 (4th Cir.1972).

**25.** *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270 (9th Cir.1983); *Watkins v. Communications Workers of America, Local 2336*, 736 F.Supp. 1156 (D.D.C.1990).

her that her claim would not be pursued, but Lowrey claims she was not notified until 1½ years later. Thus, there is a genuine issue of material fact concerning whether plaintiff was called, and, if so, whether the phone call was reasonably clear notice of the union's decision.

 Thus, the Court finds a genuine issue of material fact exists on the issue of whether the union breached its duty of fair representation which precludes summary judgment on the fair representation claim. Nevertheless, in order for the Court to retain jurisdiction under Section 301, the plaintiff must also survive summary judgment on the breach of the CBA claim against Exxon. The Court, for reasons state above, has found that the claim against Exxon must be dismissed. Because the claim against Exxon has been dismissed, the Court finds that it has no jurisdiction to consider the plaintiff's fair representation claim. Such a claim comes within the province of the National Labor Relations Board as an unfair labor practice. Federal and state courts are precluded from encroaching upon the primary jurisdiction of the Board in such cases.[26]

Although plaintiff's claim for breach of fair representation could possibly have fallen under the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. Section 501, Lowrey did not sue any labor representative personally. Thus, no jurisdiction exists in this Court for this claim.[27]

In summary, the Court finds that summary judgment is proper because the record and briefs filed by the parties fail to support the claims necessary to maintain a Section 301 action and fail to state a claim which would properly be determined by

this Court. Plaintiff's complaint against the union should have been taken up with the NLRB.

Therefore,

IT IS ORDERED that Exxon's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff's claim for breach of fair representation be dismissed for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that plaintiff's state claims are dismissed without prejudice.

Judgment shall be entered accordingly.

**26.** *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Hobbs v. Hawkins,* 968 F.2d 471 (5th Cir.1992).

**27.** Section 501 permits action to be taken against any "officer, agent, shop steward, or representative of any labor organization."

However, section 501 does not provide for suit against a labor organization or an employer. This section relates to the fiduciary relationship of union officials to their union and its membership. *Stelling v. Int'l Bhd. of Elec. Workers' Local Union No. 1547,* 587 F.2d 1379 (9th Cir. 1978), *cert. denied by Darby v. Int'l Bhd. of Elec. Workers' Local Union No. 1547,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Pignotti v. Local No. 3, Sheet Metal Workers' Int'l Ass'n,* 477 F.2d 825, 832 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973).