LEO N. DUBROVIN, Plaintiff-Appellant, v. MARSHALL FIELD'S & COMPANY EMPLOYEE'S CREDIT UNION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—86—3469

Opinion filed March 13, 1989.

John Thomas Moran and Stephen G. Selger, both of Chicago, for appellant.

John R. Ruddy and Kirkland & Ellis, both of Chicago (Roger L. Taylor and Marion B. Adler, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Leo N. Dubrovin, plaintiff, filed this action to recover damages in the circuit court of Cook County, alleging slander *per se* against Marshall Field's & Company Employee's Credit Union, Marshall Field's & Company, and John Ahlers, chairman of the board of directors of the credit union.

Plaintiff has been employed by Marshall Field's & Company since 1946 in a variety of positions. From November 1977 through May 1985, the plaintiff was employed by Marshall Field's & Company (Marshall Field's) and the Marshall Field's & Company Employee's Credit Union, wherein he held the offices of president-treasurer and served in the salaried position of managing director of the Marshall Field's & Company Employee's Credit Union (Credit Union). Plaintiff was on Marshall Field's executive payroll. However, the credit union reimbursed Marshall Field's for plaintiff's salaried position.

Although plaintiff was reelected as a director of the credit union on March 15, 1985, John Ahlers, chairman of the board of directors of

the credit union, informed the plaintiff on May 1, 1985, that his employment with the credit union was terminated based on the plaintiff's failure to meet certain performance objectives. Mr. Ahlers stated by affidavit that the plaintiff held the salaried position of manager of the credit union, and that he removed the plaintiff from that position, but never advised plaintiff that he could not continue to serve as a director and in the capacity of president and treasurer of the credit union. Moreover, plaintiff attended a board of directors meeting on June 12, 1985, where he voted as a director and provided a report in his capacity as president and treasurer of the credit union.

After notifying plaintiff of his employment termination, Mr. Ahlers offered the plaintiff a position as a shoe salesman at the Marshall Field's Oak Brook store, which he initially declined but subsequently accepted. Mr. Ahlers also accompanied the plaintiff to the credit union office after notifying him of his employment termination, and in the presence of other Marshall Field's employees, asked the plaintiff to clean out his desk, return his credit union office keys, leave some personal belongings in the credit union office and leave the premises. Mr. Ahlers then proceeded to escort the plaintiff to the elevator and exit door. While in the elevator, and in the presence of another Marshall Field's employee, Mr. Ahlers asked the plaintiff for his building pass. At the exit door, in the presence of other Marshall Field's employees, plaintiff's personal belongings were inspected by a Marshall Field's security guard.

On May 31, 1985, plaintiff filed his original complaint in the chancery division of the circuit court of Cook County seeking an injunction to restrain the directors of the credit union from removing him as president-treasurer and managing director of the credit union. The Illinois Credit Union Act (Ill. Rev. Stat. 1985, ch. 17, par. 4436) and the credit union bylaws require a majority vote of the board of directors to remove officers or members of the board of directors. When the plaintiff filed his original complaint, Mr. Ahlers had personally notified him of his employment termination. However, the board of directors had not acted upon his removal as a member of the board of directors or as an officer. On June 21, 1985, the board of directors voted to terminate the plaintiff as president-treasurer of the credit union. They also resolved that the plaintiff would remain as a director of the credit union and serve as chairman of the membership committee. However, plaintiff asserts that he was not provided with notice of the May 23, 1985, and June 27, 1985, special meetings of the board of directors.

On July 22, 1985, plaintiff filed an amended complaint. In count I

plaintiff sought an order to restrain the board of directors from preventing him from assuming his duties as a director of the credit union by not providing him with proper notice of the meetings of the board of directors. On August 8, 1985, the trial court entered an order that plaintiff be provided with the "usual and customary notice" of the board of director meetings and that a record be maintained of the notice of meetings provided to the plaintiff. The trial court further ordered the transfer of the remaining counts to the law division since no equitable matters remained before the court.

The defendants filed motions to strike or dismiss plaintiff's amended complaint on the ground that the complaint was insufficient as a matter of law, since it failed to state a cause of action. The motions to dismiss were granted by the trial court on June 20, 1986. Thereafter, plaintiff filed a second amended complaint. The defendants again filed motions to strike or dismiss plaintiff's second amended complaint upon the ground that it was insufficient at law, since it failed to state a cause of action. On November 14, 1986, the trial court granted the defendants' motions, dismissing the second amended complaint for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615).

Plaintiff argues on appeal that his second amended complaint does state a cause of action for slander *per se* since the defendants' acts and gestures communicated to third parties that he lacked integrity in his profession and he is a thief. Plaintiff further contends that Marshall Field's has a store policy that only employees terminated for security reasons are escorted from the premises. Defendants contend that to state a cause of action for slander *per se* the plaintiff must allege that a false statement was made, and when stripped of innuendo, is not reasonably capable of an innocent interpretation. Defendants further contend that conduct unaccompanied by words does not constitute slander *per se*.

■ When reviewing a complaint that was dismissed for failure to state a cause of action, we must accept as true all well-pleaded facts and reasonable inferences therefrom to determine whether the complaint states a cause of action as a matter of law. *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 503 N.E.2d 760.

■ ■ The same rules are applicable to both slander and libel. (*Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 579, 506 N.E.2d 1370; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 159, 221 N.E.2d 516.) However, Illinois distinguishes between defamatory language that is slanderous *per se*

and slanderous *per quod*. A statement is slanderous *per quod* if innuendo and extrinsic facts are required to give it a slanderous meaning and special damages are alleged and proved. (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741-42, 415 N.E.2d 434; *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 258, 458 N.E.2d 115.) In the instant case plaintiff did not allege any special damages to support an action for slander *per quod*. Therefore, we will review this appeal based on plaintiff's contention that the statements and conduct are actionable *per se* as a matter of law. Whether Mr. Ahlers' statements and conduct are defamatory *per se* is a question of law to be resolved by the court. *Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844, 847, 499 N.E.2d 666.

In analyzing a defamation allegation, we must focus upon the effect of the publication on those who received it since such communication must be capable of conveying a defamatory meaning to the person who heard it. (*Colson v. Stieg* (1982), 89 Ill. 2d 205, 212, 433 N.E.2d 246.) The plaintiff asserts that Mr. Ahlers' actions were slanderous *per se* because third persons could impute that a criminal offense had been committed and he lacked integrity in discharging his duties. To constitute slander *per se*, the language and acts complained of in and of themselves must be "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." (*Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145; *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 1024, 483 N.E.2d 965.) Moreover, it is well-settled that under common law, words are actionable *per se* if they falsely impute: (1) lack of integrity in the discharge of that person's duties of office or employment; (2) words which result in prejudice to that person's trade or profession; (3) commission of a criminal offense; and (4) infection with a communicable disease. *Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 580, 506 N.E.2d 1370; *Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145; *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27, 457 N.E.2d 392.

In a defamation action the specific defamatory material must be clearly identified. (*Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 163, 466 N.E.2d 1137.) The alleged defamatory statements and acts specifically referred to by the plaintiff consisted of asking the plaintiff to: (1) clean out his desk; (2) leave some personal belongings in the credit union office; (3) return his credit union office keys; and (4) escorting the plaintiff to the elevator and exit door; (5) requesting his building pass in the elevator; and (6) inspection of his personal be-

longings by a security guard. Each of these actions occurred in the presence of other Marshall Field's employees. However, the statements articulated by Mr. Ahlers standing alone cannot be considered as so "obviously or naturally harmful" as to constitute slander *per se* to the plaintiff. These statements on their face do not falsely impute to the public the commission of a crime nor do they impute a lack of integrity in the discharge of plaintiff's duties of employment. Moreover, under the facts of this case, we cannot conclude that the actions of escorting the plaintiff or the inspection of his personal belongings by a security guard in the absence of any defamatory statements constitutes slander *per se.*

■ Even if specific slanderous statements were made, before they can be determined to be defamatory as a matter of law, they must be viewed in light of the innocent construction rule set forth in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195. The *Chapski* court held:

> "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*" 92 Ill. 2d at 352.

Moreover, whether the statements and acts complained of are susceptible to an innocent interpretation is a question of law for the court to determine by reviewing the statements and acts stripped of innuendo. *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 256, 458 N.E.2d 115; *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 483, 361 N.E.2d 74.

■ The statements and acts raised by the plaintiff in the instant case are reasonably susceptible to an innocent interpretation. Asking the plaintiff to clean out his desk and return his office keys and building pass can certainly be innocently construed to apply to all employees terminating their positions, either voluntarily or involuntarily. Moreover, escorting an employee to an elevator or exit door can be construed as a courtesy and searching an exiting employee can be viewed as a standard procedure of the employer. A witness to these statements or acts could have observed the interaction without concluding that the plaintiff was being terminated for dishonesty or lack of integrity in his employment. In reviewing these actions and statements under the innocent construction rule, we conclude that the alleged defamation was nonactionable as a matter of law since the

statements and actions may be innocently interpreted. Moreover, they are nonactionable *per se* because they do not fall within any of the categories recognized by Illinois law to be actionable without proof of special damages.

In view of our disposition of these issues, we need not address whether the credit union bylaws or the applicable State statute were violated, nor whether the defendants were protected by a conditional or qualified privilege. For the reasons stated, the order of the circuit court of Cook County dismissing this case for failure to state a cause of action is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.