BRYAN DAVIS *et al.*, Plaintiffs-Appellants, v. JOHN CRANE, INC., *et al.*,
Defendants-Appellees.

First District (1st Division)    No. 1—92—0998

Opinion filed April 18, 1994.

Ditkowsky & Contorer, of Chicago (Kenneth Ditkowsky, of counsel), for appellants.

Neal, Gerber & Eisenberg, of Chicago (Gerald A. Golden, George M. Hoffman, and Lawrence M. Benjamin, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs filed a four-count amended complaint against defendants, John Crane, Inc., a/k/a John Crane-Houdaille, Inc. (Crane), Arthur De Stephano, individually and as agent of Crane, Special Operations Associates, Inc. (SOA), and Michael Grady, alleging breach of contract, defamation, and interference with economic opportunity. Counts III and IV against SOA and Grady were dismissed and settled, respectively, and this appeal concerns only counts I and II of the amended complaint. On appeal, plaintiffs contend that: (1) the trial court erred in entering judgment against them following a bench trial on the breach of contract allegations of count I of the amended complaint; and (2) the trial court erred in granting summary judgment against plaintiffs and in favor of defendants based on the defamation allegations of count II of the amended complaint.

The record reveals the following relevant facts. Crane is the manufacturer of a variety of seals used in industrial and automotive

pumps, employing approximately 1,500 people at its facility in Morton Grove, Illinois. Crane had a policy forbidding employees from either being under the influence of drugs or using, possessing, transferring or distributing drugs during work hours or while on company premises.

During 1987 and early 1988, Crane's in-house medical staff informed De Stephano, Crane's vice-president of human resources, of increasing instances of drug use by on-duty employees. In response, Crane hired an outside consulting firm, Bensinger, DuPont & Associates, Inc. (BDA), to develop a comprehensive drug and alcohol policy. BDA hired SOA, an investigation firm, to investigate the extent of Crane's employee drug abuse problem. SOA placed undercover investigators in the plant as production employees, who reported daily to BDA, detailing observations of drug use by specific employees. BDA then provided reports to De Stephano. De Stephano and representatives of BDA met approximately 10 times off the Crane premises to discuss the reports and positively identify those employees involved in drug-related activities.

On July 19, 1989, Crane terminated approximately 41 employees, including the plaintiffs, all of whom were identified by the investigators as violating Crane's drug policy. That day, the plaintiffs and the other employees were told by their supervisor to report to the personnel office. Each employee then met with De Stephano and Jeffrey Kinkle, another Crane management official, in De Stephano's office. De Stephano read a prepared statement to each employee informing the employee that his or her employment was being terminated for "violation of company policy in the area of drugs." Each employee was escorted by a security guard to his or her work area or locker to collect personal belongings, and then escorted off of Crane's premises.

Plaintiffs filed a four-count complaint against defendants, counts I and II of which are the subject of this appeal. In count I, plaintiffs alleged that an employment contract existed between plaintiffs and Crane, requiring Crane to comply with a four-step progressive disciplinary policy prior to termination of employment as follows: first, a verbal warning; second, a written warning; third, a three-day suspension; and fourth, dismissal if all attempts at amelioration or rehabilitation failed. Plaintiffs alleged that Crane had failed to comply with this procedure before terminating them.

In count II, plaintiffs alleged defamation by De Stephano and Crane. Plaintiffs alleged that De Stephano's statements to the plaintiffs, "You are terminated for drug related reasons," and/or "You are terminated for drug use," were heard by security guards

who were within earshot and therefore caused the plaintiffs "to be outrageously humiliated." Plaintiffs alleged that the allegations of drug use against them were false and untrue, and made knowingly and with reckless disregard by De Stephano, who then "paraded [the plaintiffs] in front of fellow employees."

Defendants filed a motion for summary judgment on count II of plaintiffs' amended complaint on October 10, 1991. Following a hearing on defendants' motion on January 22, 1991, the trial court, Judge Arthur A. Sullivan, presiding, granted summary judgment in defendants' favor, finding no just reason to delay enforcement or appeal.[1] On February 11, 1991, the trial court denied plaintiffs' motion to reconsider the January 22, 1991, order of the trial court granting summary judgment in favor of defendants on count II.

A trial on count I of plaintiffs' amended complaint commenced before Judge Edward R. Burr, on February 27, 1992. At trial, Angela Bower, the sister-in-law of plaintiff Bryan Davis, testified on behalf of the plaintiffs that she was a front desk receptionist at Crane for two months at the end of 1987. She received a welcome package when she began working, which contained a yellow employee handbook, approximately 5 by 7 inches, and 100 pages long. The handbook included a statement of a four-step termination process, which consisted of a verbal warning; written warning; three-day suspension; and termination.

Plaintiffs' counsel introduced into evidence plaintiffs' exhibit 1, a copy of a Crane attendance policy, which provided as follows:

"COMPANY POLICIES PERTAINING TO THE FOLLOWING WILL BE FOLLOWED TO THE LETTER OF THE POLICY:

1: ATTENDANCE
A) ABSENCE: MORE THAN ONE OCCURRENCE IN A FOUR WEEK PERIOD WILL BE CONSIDERED EXCESSIVE.
B) TARDINESS: MORE THAN TWO OCCURRENCES IN A FOUR WEEK PERIOD WILL BE CONSIDERED EXCESSIVE. THIS INCLUDES THE LUNCH PERIODS, [sic] LONG LUNCH PERIODS WILL NOT BE ALLOWED.
THE PROGRESSIVE DISCIPLINARY ACTION WHICH WILL BE FOLLOWED IS LISTED BELOW:
A) 1ST VIOLATION—VERBAL WARNING

---

[1]The transcript of the hearing on Crane's motion for summary judgment is not available in the record on appeal. Crane's citations in its brief to the facts established in the hearing reflect the facts as set forth in the affidavit of De Stephano, attached to Crane's memorandum in support of its motion for summary judgment.

B) 2ND VIOLATION—WRITTEN WARNING
C) 3RD VIOLATION—DISCIPLINARY LAYOFF (3 DAYS)
D) 4TH VIOLATION—DISCHARGE."

Bower stated that she saw evidence that the above policy was enforced, because she filed papers relating to people who had been disciplined pursuant to the policy.

On cross-examination, Bower stated that she worked for 60 days at Crane and was then terminated for tardiness. Bower did not have a copy of the employee handbook and did not recall whether the handbook contained a disclaimer.

Glen Hacker testified that he worked at Crane from March 1977 through July 1987 as a foreman. He received an employee handbook when he was first hired which contained a four-step termination policy. Hacker had the four-step policy explained to him by his supervisor, George Darling, about three years before Hacker left Crane. Darling told Hacker the four steps necessary prior to terminating an employee.

On cross-examination, Hacker stated that he was fired in 1987 for violation of company policy, but that he was never given a reason. He did not recall being suspended for three days and did not have a copy of the employee handbook. Hacker did not appeal his termination even though the four-step policy was not followed. He did not recall how many pages the handbook had, nor what it said on the first page of the handbook.

Palario Collins testified that he worked at Crane from February 1974 to July 1988. He stated that he was given an employee manual upon his employment which included a four-step termination policy and recalled that it had no limitations.

On cross-examination, Collins testified that he was fired for suspicion of drugs and that the four-step policy was not applied to him. He was not aware of any appeal procedure. He did not have the employee handbook, but recalled that it was a little, yellow booklet. Collins stated that he did not think that the four-step policy would apply in a situation where an employee hit a supervisor.

Maureen Davis, wife of plaintiff Bryan Davis, worked at Crane from October 1984 until January 1985. She left Crane because she became pregnant. Upon her employment she was given an employee manual that included a four-step process.

On cross-examination Mrs. Davis stated that she does not have the Crane employee handbook. She did not recall on what page the policy appeared or the title of the section.

Armando Martinez testified that he worked at Crane from August 1980 until November 1987 when he was terminated pursuant to the

four-step procedure for excessive absenteeism. He did not have a copy of the employee manual and never read the entire manual.

Geraldine Krick testified that she is the benefits manager for Crane. She could not find a copy of the alleged employee handbook. Krick never saw plaintiffs' exhibit 1, the four-step attendance policy, posted on Crane bulletin boards, but did not search the bulletin boards for the information. Prior to the time of trial, she had never seen a copy of any employee handbook at Crane. At the time of trial Krick saw, for the first time, an employee handbook which was printed and distributed to Crane employees only recently. Krick was not aware of any four-step disciplinary policy that applied to any violation, no matter how severe. Krick stated that one employee file shows that the employee received a "new employee manual" in 1980, and that it was coded as the receipt of a "new hire booklet." She did not know if the new hire booklet was yellow.

Plaintiff John Hill testified on his own behalf that he started working at Crane in November 1969 as a machine maintenance man. At that time, he received an employee handbook which contained a four-step disciplinary procedure. He stated that, to his knowledge, there was no limitation on the policy and that the policy was posted on company bulletin boards and disseminated in letter form to employees. Hill stated that on May 11, 1984, he was observed leaving Crane premises without punching out and was given a written warning that if it should happen again, he would get three days off without pay.

On cross-examination, Hill admitted that he does not have a copy of the employee handbook and that he last saw it 19 years ago.

Plaintiff Brigitte Rhodes testified on her own behalf that she started working at Crane in 1983 in the assembly department. At her orientation, she received a yellow employee handbook from Dorothy Casey and viewed a slide presentation. Casey also discussed the four-step termination policy with her. She understood the four-step policy to apply to every violation of company rules. She also saw the policy posted on the company bulletin board. In 1984, Rhodes discussed the four-step policy with her supervisor regarding her absenteeism. She had previously received both verbal and written warnings and was told that she had only two more steps before her termination.

On cross-examination, Rhodes stated that she has been living with plaintiff Hill since 1983. She had not seen a copy of the employee manual since 1983. Her testimony at trial conflicted with her testimony at a prior deposition. At her deposition, Rhodes testified that: (1) Casey did not discuss the termination policy with her at her orientation; (2) she did not recall what violations the four-step policy

applied to; and (3) she only saw the four-step termination policy in the employee manual.

Plaintiff Homero Garza testified that he became employed at Crane on March 15, 1976. At that time, he received an employee handbook which contained a four-step termination policy. He was not informed of any limitations in the policy. The policy was also posted on company bulletin boards. The posted policy did not mention any subject matter.

On cross examination, Garza acknowledged that upon his employment, he received a booklet entitled "Information For New Employees." Garza admitted that the booklet contained no information regarding a four-step disciplinary policy. He stated that the four-step policy was contained in a document called "John Crane Handbook." He believed the policy was contained on one page, but did not know what else the termination policy consisted of because he only paid attention to the four steps.

Plaintiff Bryan Davis testified that he became employed by Crane in September 1976 and received an employee handbook. The handbook was yellow, 50 to 75 pages long, and contained a four-step policy on termination. Davis stated that the policy was posted on bulletin boards around the factory.

On cross-examination, Davis admitted that he signed a document on the day he was hired acknowledging that he received a booklet entitled "Information For New Employees." The document made no reference to an employee manual. Davis stated that he does not have a copy of the booklet containing the four-step policy and remembers seeing it last on the day he was hired in 1976. While he assumed that the policy would apply in a situation where an employee punched a supervisor, it did not say so in the booklet. He understood that if someone stole from Crane he or she would probably get a verbal warning regardless of what he or she stole, but he is not sure. During the period of his employment, the four-step policy was consistently followed at Crane. He did not recall whether the manual used the phraseology that an employee was "supposed to" or "must" receive the four-step policy prior to termination. He did not recall what the manual said about the types of violations the four-step policy applied to.

Arthur John De Stephano testified as an adverse witness. De Stephano stated that he was the vice-president of human resources at Crane in July 1988. De Stephano stated that there was a four-step progressive disciplinary policy that applied to minor violations such as absenteeism, tardiness, "horsing around" and minor safety violations, and not to any serious violations. To his knowledge, the

four-step policy was never revoked through the changes in company ownership in 1983 and 1987. De Stephano stated that there was no language in the employee orientation slide presentation regarding a four-step progressive disciplinary procedure. He further stated that he signed off on about a dozen terminations involving progressive discipline, mostly involving absenteeism.

Dorothy Casey then testified. Casey worked at Crane for 32 years, from 1953 until 1985, as a recruiter in the personnel department. Casey ran a one-hour new-employee orientation program, during which time the employees filled out forms and watched a movie or slide presentation. Casey ran thousands of orientations during her tenure at Crane, but knew of no four-step disciplinary policy. Casey knew the company policy for stealing, hitting a supervisor or drug use to be immediate dismissal.

During the 1970s, an "Information for New Employees Booklet" was distributed to employees, along with an accompanying color slide presentation. The presentation included an audio portion that stated as follows:

"We have very strict rules about fighting, gambling, drinking of alcoholic beverages and use of unauthorized drugs on John Crane property. Namely, don't do it. These rules are enforced."

Casey never saw a four-step disciplinary procedure or an employee appeal procedure posted on Crane bulletin boards.

On cross-examination, Casey testified that she did not give out any booklet to employees that was 100 pages long. Casey read into the record from plaintiff Davis' personnel file that on December 7, 1987, he was given a verbal warning for violation of the attendance policy and that he was subject to progressive discipline if he violated the attendance policy in the future.

At the conclusion of the evidence, the defendants made a motion for a directed finding. Following arguments on March 6, 1992, the trial court entered a directed finding in defendants' favor and dismissed the plaintiffs' action.

On March 16, 1992, plaintiffs filed a notice of appeal of the trial court's two judgments entered February 11, 1992, and March 6, 1992, pursuant to Illinois Supreme Court Rule 303 (134 Ill. 2d R. 303).

Initially, defendants raise a jurisdictional issue regarding the plaintiffs' appeal of the summary judgment order entered on January 22, 1992, and made final on February 11, 1992. Defendants argue that plaintiffs' appeal of the order entered on February 11, 1992, was untimely.

The record shows that plaintiffs filed their notice of appeal on March 16, 1992. As 1992 was a leap year, 30 days from the final order entered February 11, 1992, would have been March 12, 1992.

Supreme Court Rule 303 (a) provides in pertinent part as follows:
"(1) *** the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." 134 Ill. 2d R. 303(a).

■ Although nothing in Rule 303(a) equates a filing date with a date of postmark, our supreme court in *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 533 N.E.2d 1072, held that the "pro-mailing" policy of Supreme Court Rule 373 should be applied to the filing of a notice of appeal under Rule 303 (a). Rule 373 provides:

"Unless received after the due date, the time of filing records, briefs or other papers required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court. If received after the due date, the time of mailing shall be deemed the time of filing. *Proof of mailing shall be made by filing with the clerk a certificate of the attorney, or affidavit of a person other than the attorney, who deposited the paper in the mail, stating the date and place of mailing and the fact that proper postage was prepaid, or a United States Postal Service certificate of mailing.*" (Emphasis added.) 134 Ill. 2d R. 373.

The record includes, at the bottom of the page entitled "Notice of Filing," a "Certificate of Mailing" which states as follows:

"Undersigned, being first duly sworn on oath, certifies that s/he served a copy of the above notice and attached documents upon those to whom it is directed by mailing a copy to each of them postage prepaid, and placing in the U.S. mail at Chicago, Illinois on March 12, 1992."

A signature appears below the above quoted language.

We find that the above language satisfies the requirements of Rule 373 and constitutes "an affidavit of a person other than an attorney." Thus, the plaintiffs' notice of filing was timely mailed on the 30th day following entry of the final order on February 11, 1992.

Plaintiffs initially contend that the trial court erred in entering a directed finding in favor of the defendants at the close of the trial on count I of the amended complaint, because they presented a *prima facie* case for breach of an employment contract.

Pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110 (now 735 ILCS 5/2—1110 (West 1992))), in all cases tried without a jury, a defendant may at the close of plaintiff's case move for a directed finding of judgment in its favor. In ruling on a motion for a directed finding, the court must apply a two-part analysis, first determining as a matter of law whether a plaintiff has presented a *prima facie* case and entering judgment for the defendant if a plaintiff has failed to do so. (Ill. Rev. Stat. 1989, ch.

110, par. 2—1110; 735 ILCS 5/2—1110 (West 1992); *Dyduch v. Crystal Green Corp.* (1991), 221 Ill. App. 3d 474, 477, 582 N.E.2d 302.) A motion for directed verdict or judgment *n.o.v.* should be granted in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 603 N.E.2d 449; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The decision of a trial court to grant a defendant's motion for directed finding will not be reversed unless it is against the manifest weight of the evidence. *Dyduch*, 221 Ill. App. 3d at 477.

■ In order to show a *prima facie* case that the alleged employee handbook or policy statement created enforceable contractual rights, plaintiffs were required to establish the three requirements set forth in *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, as follows:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Duldulao*, 115 Ill. 2d at 490.

Whether there exists a clear and definite promise is not for the trier of fact to determine, but is, rather, "a threshold question of law to be determined by the court." (*Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 521, 545 N.E.2d 373.) In the present case, the trial court found that plaintiffs failed to surmount the first requirement of *Duldulao*, that a clear promise had been made, and therefore directed a finding for defendants.

In a recent case based on the same facts and involving the same defendants as the present case, this court affirmed the trial court's entry of summary judgment in favor of the defendants where the plaintiffs failed to produce any specific policy regarding employment and termination other than the identical attendance policy produced in the present case. See *Mansourou v. John Crane, Inc.* (1993), 248 Ill. App. 3d 963, 969-70.

The record of the trial in the present case reveals that while each of the plaintiffs testified that he or she received an employee handbook containing a four-step termination policy upon commencing employment with Crane, none of the plaintiffs could produce a copy of the alleged handbook at the time of trial. In addition, present and

former Crane management employees testified that they had never seen a handbook or manual containing the alleged termination policy. The record in fact indicates that the only four-step termination policy in effect at Crane was in regard to attendance, as evidenced by plaintiffs' exhibit 1, the memorandum setting forth the progressive disciplinary policy for absence and tardiness. Plaintiffs have failed to show that there was any employment contract in effect which defendants breached, and therefore a directed finding was proper.

Next, plaintiffs contend that the trial court erred in entering summary judgment for defendants as to the defamation action in count II of their amended complaint.

Summary judgment may be granted where the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440.) Although a plaintiff is not required to prove his or her case at the summary judgment stage, he or she must present some evidentiary facts to support the elements of the claim. *Cozzi v. North Palos Elementary School District No. 117* (1992), 232 Ill. App. 3d 379, 382, 597 N.E.2d 683, 685.

Plaintiffs argue that the pleadings, affidavits and depositions on file show that they were defamed by the following acts: (1) each plaintiff's name was announced on the public address system and each plaintiff was directed to report to the personnel office of Crane; (2) when the plaintiffs arrived in De Stephano's office individually, security guards could have overheard the conversation within the office; (3) De Stephano confronted each plaintiff about the use, sale or possession of drugs in the presence of at least one other person and then fired each plaintiff; (4) De Stephano had a conversation at a restaurant wherein he discussed the "charges" against the plaintiffs "in public"; (5) plaintiffs were escorted by security guards from Crane premises and "paraded" through the plant; and (6) De Stephano told Maureen Davis, wife of plaintiff Bryan Davis, that he had been terminated for criminal action and that he would go to jail if Bryan and Maureen Davis took legal action.

We note initially that plaintiffs' contentions on appeal differ from the allegations in plaintiffs' amended complaint, wherein plaintiffs alleged only that De Stephano's statements to the plaintiffs, "You are terminated for drug related reasons," and/or "You are terminated for drug use," were heard by security guards who were within earshot, and therefore caused the plaintiffs "to be outrageously humiliated," and that the allegations of drug use against them were false and untrue, and made knowingly and with reckless disregard

by De Stephano, who then "paraded [the plaintiffs] in front of fellow employees." Defendants respond that summary judgment was proper as to these alleged defamatory remarks because the statements were conditionally privileged.

■ A privileged communication is one which, because of the occasion on which or the circumstances under which it is made, is not regarded as defamatory and actionable. (*Rosner v. Field Enterprises, Inc.* (1990), 205 Ill. App. 3d 769, 791.) The elements of a conditional privilege for defamatory statements are as follows:

" '[G]ood faith by the defendant, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only.' " (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 300, 484 N.E.2d 841, quoting *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377, 150 N.E.2d 202.)

Whether an allegedly defamatory statement is protected by a qualified privilege is a question of law for the court. *Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 489, 484 N.E.2d 1100.

■ In the present case, the record shows that De Stephano had a duty, as vice-president of human resources at Crane, to enforce the employment policies and work rules of the Company. Thus, De Stephano's statements to the plaintiffs that they were terminated for violation of Crane's drug policy fulfilled his managerial duties. In his affidavit, De Stephano states that his statements to the plaintiffs upon their terminations were based on reports provided to him by independent investigators who engaged in undercover activities at the Crane plant. The record shows that De Stephano discussed the identities of the individuals in the reports, including the plaintiffs, with the undercover investigators on approximately ten occasions off the company premises. On one occasion, in approximately May 1988, De Stephano met with representatives of the consulting firm BDA and the investigators at a restaurant called Fettucini's. On July 19, 1988, the plaintiffs were called individually into De Stephano's office and terminated. Thus, the statements were made on a proper occasion and publicized to plaintiffs, the proper parties, in a proper manner.

Plaintiffs have failed to allege any facts which would support their allegations that the allegedly defamatory remarks were published. For example, the joint affidavit of plaintiffs Hill and Rhodes is internally inconsistent and therefore unreliable. Hill and Rhodes state:

"The statement made by De Stephano was not made in private, but was made in a manner reasonably calculated to embarrass, and humilate [sic] the affiant and persons similarly situated.

* * *

Each employee affected was summoned to DeStephano's office either by loud speaker, his supervisor, or both. The employee was then led into the office where he was informed that he had been terminated for drug related activities.

* * *

The terminated employees were not privately informed that they were terminated, but instead were placed on public display for all to observe!"

Plaintiffs have also failed to set forth any facts or affidavit which shows that any third party who was employed at Crane was present at Fettucini's restaurant at the time of De Stephano's discussion with the investigators, heard any of the plaintiffs' names mentioned, and then presumed they were being terminated when they heard the plaintiffs' names read over the public address system at Crane weeks to a month later.

Once a qualified privilege applies, a communication is only actionable if plaintiffs can show actual malice. (*Edwards*, 137 Ill. App. 3d at 490.) To establish actual malice, a defamation plaintiff must show that (1) the utterance was false and (2) that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.) "Reckless disregard" has been defined as proceeding to publish the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth. (*St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323; *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 552 N.E.2d 973.) This burden is not satisfied by the bare allegation that a defendant acted maliciously and with knowledge of the falsity of the statement; the plaintiff must allege facts from which actual malice may be inferred. *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 632, 435 N.E.2d 1297.

Plaintiffs have failed to allege any facts which would support a finding of malice. In a case where defendants retained and relied on the advice of disinterested experts in denying an insurance claim based on arson, this court found no actual malice. (See *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 37, 529 N.E.2d 662.) Thus, De Stephano's and Crane's reliance on the reports prepared by BDA and SOA does not establish malice.

■ Plaintiffs' further argument that the act of being escorted off of Crane premises by security guards is defamation *per se* is without merit. In *Dubrovin v. Marshall Field's & Co. Employee's Credit Union* (1989), 180 Ill. App. 3d 992, 536 N.E.2d 800, this court examined a termination situation where an employer: (1) asked the employee to clean out his desk, leave some personal belongings in the office, and return his office keys and security pass; and (2) escorted the employee to the elevator and exit door, all within the presence of other employees. This court determined that such statements and actions are non-actionable as a matter of law, because they are reasonably susceptible to innocent interpretation, and do not fall within any of the categories recognized by Illinois law to be actionable without proof of special damages. *Dubrovin*, 180 Ill. App. 3d at 998.

We therefore find that the trial court properly entered summary judgment in defendants' favor on count II of plaintiffs' amended complaint.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.