2016 IL App (1st) 141453

FIRST DIVISION
February 16, 2016

No. 1-14-1453

| | | |
|---|---|---|
| VLADIMIR MELAMED, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 99 D 16853 |
| | ) | |
| JULIA MELAMED, | ) | Honorable |
| | ) | Kathleen G. Kennedy, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Liu and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal begins with a "Motion to Increase Child Support" brought by Respondent in September 2008.  In February 2012, the trial court ruled that Respondent had satisfied the requirements needed to demonstrate a substantial change of circumstances.  The court then proceeded to the issues of the amount of child support and its retroactivity.  In June 2012, Respondent filed a petition to establish a section 503(g) trust.  750 ILCS 5/503(g) (West 2012). On October 16, 2013, the court issued an order awarding Respondent $5,439.05 per month in child support, retroactive support in the amount of $340,768.27, and ordering Petitioner to establish a section 503(g) trust in the amount of $400,000 for the support of his daughter.  In the same order the trial court also ordered Petitioner to pay Respondent's attorney fees incurred from September 2008 through October 2013.

¶ 2    On March 21, 2014, the trial court entered an order clarifying various aspects of its October 16, 2013 order.  The court clarified that it was awarding attorney fees to Respondent pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act.  750 ILCS 5/508(b) (West 2012).  Next, the court clarified the amount Petitioner should pay per month in child support.  Finally, the court resolved the parties' outstanding motions for sanctions.

¶ 3    Petitioner raises the following issues on appeal: (1) whether the trial court erred in bifurcating a post trial petition to modify child support; (2) whether the trial court erred in admitting into evidence documents without proper foundation; (3) whether the trial court's finding regarding the credibility of witnesses is against the manifest weight of the evidence; (4) whether the court erred in determining the amount of child support and requiring the establishment of a section 503(g) trust; and (5) whether the trial court erred in denying Petitioner's motion for sanctions pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) and Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 4    As set forth herein, Petitioner has waived review of the bifurcation issue, the witness credibility issue and the denial of his motion for sanctions by failing to raise any arguments in support of them.  We affirm the trial court's order granting Respondent's "Motion to Increase Child Support."  We affirm the establishment of a section 503(g) trust, but modify its terms to provide for its termination and return of the remainder to Petitioner.

¶ 5                          JURISDICTION

¶ 6    There was a jurisdictional issue raised during the pendency of this case that we clarify before proceeding to the merits of the appeal.  The trial court entered an order resolving all outstanding issues on March 21, 2014.  A "Notice of Appeal" should have been filed within 30 days of that date or by April 21, 2014.  Petitioner failed to do so.  Counsel for Petitioner filed a

motion for leave to file a late notice of appeal pursuant to Illinois Supreme Court Rule 303(d). (eff. May 1, 2007). The rule requires such a motion be made within 30 days after the expiration of the first 30 days (here May 20, 2014). *Id.* Both the motion itself and the docketing statement indicate the motion was filed on May 22, 2014. However, the affidavit of petitioner's attorney indicated that he placed the motion in the mailbox on May 20, 2014. We granted the motion on the basis of a "reasonable excuse" but without determining whether the motion was timely under the mailbox rule. We invited the parties to address the issue in their brief, neither party did so.

¶ 7    In *Davis v. John Crane Inc.*, 261 Ill. App. 3d 419, 427 (1994), this court found that when the notice is mailed, the time of mailing shall be deemed the time of filing. Proof of mailing shall be made by filing a certificate of mailing. *Id.* Here, the certificate of mailing accompanying the Rule 303(d) motion indicated it was mailed on May 20, 2014. Since Respondent raises no argument in her brief attacking this claim, we find the motion for leave to file a late appeal was timely filed under the mailbox rule.

¶ 8    Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6 of the Illinois Constitution, and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 1, 2007).

¶ 9                                    BACKGROUND

¶ 10    Given the long and tortured procedural history of this case our background recites facts limited to those relevant on appeal. Respondent-Appellee, Julia Melamed (Respondent), and Petitioner-Appellant, Vladimir Melamed (Petitioner), were married in July 1992. The parties sought a petition for dissolution of marriage in 1999 and a judgment was entered in April 2001. The marital settlement agreement set forth child support for the parties' two children, then 7 and 1 (now 21 and 15). It provided that Petitioner would pay $400 per month in child support

beginning in May 2001. The current appeal stems from the "Motion to Increase Child Support" brought by Respondent in September 2008.

¶ 11    After Respondent filed her motion, the parties then engaged in what can only be described as a contentious discovery process. Several motions to compel and motions for sanctions were filed by both parties. On July 2, 2010, the trial court conducted a case management hearing to address the discovery issues. Unfortunately, the trial court's attempts to move the parties along were unsuccessful and this case continued to be bogged down by the parties (and their attorneys) continued feuding over discovery. On October 22, 2010, the trial court, finding the parties' conduct contrary to the best interest of the children, set parameters for the hearing on Respondent's "Motion to Increase Child Support" and court supervision of discovery. In the order, the trial court bifurcated the proceedings. The court ordered the parties to first proceed on the issue of whether there was a substantial change of circumstances as to Petitioner's ability to pay. Then the parties were to proceed to the issue of a substantial change of circumstances as to the children's needs. Because the first issue dealt solely with Petitioner, the court stayed all discovery Petitioner sought from Respondent.

¶ 12    On December 8, the trial court began hearings on whether there had been a substantial change of circumstances as to Petitioner's ability to pay. The hearings on this issue carried into February. Unsurprisingly, more motions followed.

¶ 13    Finally, in February 2012, the trial court ruled that Respondent had satisfied the requirements for a substantial change of circumstances. In its ruling, the trial court found that the evidence established a substantial change of circumstances as to Petitioner's ability to pay child support dating back to October 2008. The court also found Respondent may be entitled to as much as 42 months of retroactively modified child support.

¶ 14    The court then proceeded to the issues of the amount of child support and its retroactivity. In June 2012, Respondent filed a petition to establish a section 503(g) trust. Yet more motion practice ensued. On October 16, 2013, the court issued an order resolving whether there had been a substantial change of circumstances as to the children's needs. The court reconsidered part of its order from October 22, 2010, and found that the parties agreed to review child support based on the guidelines found in section 505 rather than the modification provisions of section 510 of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/505, 510 (West 2012).

¶ 15    However, the trial court found that both parties were essentially seeking a deviation from the guidelines with Petitioner seeking to decrease his $400 a month child support and Respondent seeking to increase Petitioner's contribution. In deviating from the guidelines the court made the following findings of fact: (1) Petitioner became unemployed shortly after Respondent filed her motion yet his lifestyle had remained the same or even improved; (2) Petitioner and his mother comingled their resources; (3) Petitioner has financial resources to support a lifestyle that includes traveling, maintaining several properties that have no mortgage, purchasing new properties, and seeking fanciful business opportunities; (4) Respondent's financial resources are dependent upon the extensive time and effort she puts into her medical practice; and (5) Petitioner acted with the intent to avoid paying Respondent more than $400 per month in child support despite his vast financial resources and his ability to contribute substantial sums to Respondent for the support of the children. Based on this, the court found Respondent proved a compelling reason to deviate from the guidelines.

¶ 16    The court granted Respondent's "Motion to Increase Child Support" and awarded the following: $5,439.05 per month in child support, retroactive support in the amount of $340,768.27 (dating back to when the motion was filed), and directing Petitioner to establish a

section 503(g) trust in the amount of $400,000 for the support of his minor daughter. The trial court also ordered Petitioner to pay Respondent's attorney fees incurred from September 2008 through October 2013.

¶ 17    On March 21, 2014, the trial court entered an order clarifying various aspects of its ruling from October 16, 2013. The court clarified the basis upon which it was awarding attorney fees to Respondent and ordered Petitioner to pay Respondent's attorney fees in the amount of $21,225.70 pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act. Next, the court clarified that Petitioner should pay $5,912.01 per month in child support (not $5,439.05). Finally, the court resolved the parties' outstanding motions for sanctions. The court denied Petitioner's motion for sanctions and granted Respondent's motion for sanctions, ordering Petitioner pay $4,600. This was based on a previous order directing Respondent to pay $200 for every day his financial disclosure was late.

¶ 18    Petitioner raises the following issues on appeal: (1) whether the trial court erred in bifurcating a post trial petition to modify child support; (2) whether the trial court erred in admitting into evidence documents without proper foundation; (3) whether the trial court's finding regarding the credibility of witnesses is against the manifest weight of the evidence; (4) whether the court erred in determining the amount of child support and requiring the establishment of a section 503(g) trust; and (5) whether the trial court erred in denying Petitioner's motion for sanctions pursuant to Illinois Supreme Court Rule 219(c) and Illinois Supreme Court Rule 137.

¶ 19    Petitioner's "Notice of Appeal" was not timely, but we allowed it pursuant to Illinois Supreme Court Rule 303(d) as discussed in more detail in the jurisdictional section. Ill. S. Ct. R. 303(d) (eff. Jan. 1, 2015).

¶ 20                                    ANALYSIS

¶ 21    Before moving on to address the issues raised on appeal, we must admonish both attorneys for the omissions in the briefs submitted. " 'A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error.' " *People v. Universal Public Transportation, Inc.*, 2012 IL (1st) 073303-B, ¶ 50 (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

¶ 22    Both briefs contain numerous typos, misspellings, and other grammatical errors. Petitioner's "Statement of Facts" contains improper arguments, unnecessary comments, and at certain points a complete mischaracterization of what took place below. Bizarrely, Petitioner raises five issues but only addresses two of them. Moreover, Petitioner's continued insistence throughout his brief that Respondent has committed a fraud on the trial court is wholly inappropriate. Respondent's brief is not without fault either. Respondent's section entitled "Issues Presented on Review" inexplicably contains arguments. Such briefing is indicative of how this case has been litigated–poorly.

¶ 23    The first issue Petitioner raises on review is whether the trial court erred in bifurcating a post trial petition to modify child support. Petitioner fails to put forth any argument on this point and therefore has waived review of the issue. Illinois Supreme Court Rule 341(h)(7) states, "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Because Petitioner fails to address the issue of bifurcation in his brief, he has waived review of the issue and we will not address it.

¶ 24    Next, the Petitioner alleges several underlying errors in the trial court's granting of Respondent's "Motion to Modify Child Support."  We address each one in turn.

¶ 25    Petitioner takes issue with the trial court's admission of his own bank statements and the tax returns for Petitioner's company proffered by Respondent at trial and admitted by the court as party admissions.   Petitioner argues the documents are hearsay and that the trial court erred in admitting these documents into evidence as party admissions.

¶ 26    A determination that a statement was hearsay is a question of law.  *Halleck v. Coastal Building Maintenance Co.*, 269 Ill. App. 3d 887, 891 (1995).   On appeal, a reviewing court examines a question of law under a *de novo* standard of review.  *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

¶ 27    Courts generally grant wide latitude in construing statements as admissions.  *People v. Bryant*, 391 Ill. App. 3d 228, 244 (2009). "There is no requirement that an admission be inculpatory or against interest when made or when offered, because the theory of the admissions exception is based upon the view that the admissibility of a party's own statement is a product of the adversary system."  *People v. Aguilar*, 265 Ill. App. 3d 105, 110 (1994).   Illinois Rule of Evidence 801(d) provides that a statement is not hearsay if:

"The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the

conspiracy, or (F) a statement by a person, or a person on behalf of an entity, in privity with the party or jointly interested with the party." Ill. R. Evid. 801(d)(2) (eff. Jan. 1, 2011).

¶ 28 We find the trial court properly admitted the challenged exhibits into evidence based on them being admissions of a party-opponent. The bank and tax documents challenged fall within Illinois Rule of Evidence 801(d)(2) and are therefore not hearsay. Petitioner acknowledged that the exhibits were his bank statements and the tax return for the company he owned and controlled. Accordingly, the documents can be viewed as statements by a person authorized by the party to make a statement concerning the subject. Ill. R. Evid. 801(d)(2)(C) (eff. Jan. 1, 2011). Petitioner's argument that the trial court should not have admitted them because they are incomplete records is absurd. A review of the record demonstrates that Respondent had great difficulty securing discovery compliance from Petitioner. When Petitioner did turn over records, they were often incomplete. Petitioner's argument essentially seeks to take advantage of his own noncompliance with discovery. We cannot accept such an argument.

¶ 29 Petitioner also raised as an issue the trial court's findings regarding the credibility of the witnesses. However, like several other issues raised, Petitioner fails to raise any argument in support of this issue. We note that throughout his brief, Petitioner takes issue with the credibility of Respondent and her attorney. However, Petitioner's brief lacks a dedicated section containing citations to case law and relevant portions of the record. It is not the job of this court to piece together Petitioner's argument from various sections of his brief. *Universal Public Transportation, Inc.*, 2012 IL (1st) 073303-B, ¶ 50. Accordingly, Petitioner has waived review of it. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 30    As part of his contention the trial court erred in granting Respondent's "Motion to Increase Child Support," Petitioner also argues that the trial court erred in deviating from the guidelines established in section 505 of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/505 (West 2012).  Petitioner argues that the trial court erred by not determining Respondent's income nor the actual needs of the child when it deviated from the guidelines.  He also argues that the trial court erred in averaging his income.

¶ 31    Petitioner's first argument is essentially one of statutory construction as he is alleging section 505 requires the court to make a specific finding regarding Respondent's income and the needs of the children.  We review *de novo* an issue of statutory construction. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996).  Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). The plain language of a statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).  "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *Id*.  The statute should be read as a whole and construed "so that no term is rendered superfluous or meaningless." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). We do not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the legislative intent. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 251 (2004).

¶ 32    In making a determination as to the child support owed by a parent, the court uses the guidelines set forth in section 505(a)(1) to set the minimum amount of support owed.  750 ILCS 5/505(a)(1) (West 2012).  Subsection (a)(2) allows for deviating from the guidelines found in subsection (a)(1) and provides: "[t]he above guidelines shall be applied in each case unless the

court finds that a deviation from the guidelines is appropriate after considering the best interest of the child in light of the evidence, including, but not limited to, one or more of the following relevant factors." 750 ILCS 5/505(a)(2) (West 2012). If the court deviates from the guidelines, the court must state the amount that would have been required under the guidelines, if calculable, then the court must include the reason for the variance from the guidelines. *Id.*

¶ 33    The trial court did not err when it did not make a specific finding in its order regarding the Respondent's income nor the actual needs of the children because the statute does not require it.    The relevant statutory text allows a trial court to deviate from the guidelines "after considering the best interest of the child in light of the evidence, including, but not limited to, one or more of the following relevant factor." *Id.* This language demonstrates the court can consider the listed factors but is not required to make a specific finding as to each one. The statutory language only requires the trial court provide a reason or reasons for its deviation, which it did. *Id.*

¶ 34    Importantly, the legislature included several commands that the trial court must follow in setting child support.    Subsection (a)(1) commands that "[t]he Court shall determine the minimum amount of support by using the following guideline" while subsection (a)(2) provides "[t]he above guidelines shall be applied in each case unless the court finds that a deviation from the guidelines is appropriate" and "[i]f the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." See 750 ILCS 5/505(a)(1)-(2) (West 2012). Noticeably, when deviating from the guidelines, the word "shall" is absent from the factors the trial court considers. The lack of the word "shall" here, while present in other parts of subsections (a)(1) and (a)(2) indicates that the legislature

does not specifically require the court to consider each factor located at subsections (a)(2)(a) to (e) when determining the best interest of the child. 750 ILCS 5/505(a)(2)(a)-(e) (West 2012).

¶ 35    Even though the trial court did not make specific findings in its order, a review of the record demonstrates that the trial court heard testimony regarding both Respondent's income and the needs of the children. Furthermore, in its order, the court noted Respondent's income is tied to the time and effort she puts into her own medical practice. The trial court complied with section 505 by stating the reasons for the deviation from the guidelines. Accordingly, we find no error with the trial court's order in this respect.

¶ 36    Next, Petitioner argues that the trial court erred in calculating his income for child support purposes. Net income is defined as the total of all income from all sources minus certain deductions. 750 ILCS 5/505(a)(3) (West 2012). In Illinois, trial courts have authority to impute income to a voluntarily unemployed noncustodial parent for purposes of determining child support. *In re Marriage of Adams*, 348 Ill. App. 3d 340 (2004).

¶ 37    Appellate courts use a deferential manifest weight of the evidence standard in reviewing the sufficiency of the evidence to support a trial court's findings of fact. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000). The trial court is in the best position to review the evidence and to weigh the credibility of the witnesses. *In re Marriage of Bates*, 212 Ill. 2d 489, 515-16 (2004). A finding of fact is against the manifest weight of the evidence where, upon review of all the evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent or the fact finder's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997).

¶ 38 The trial court did not abuse its discretion in calculating Petitioner's monthly income for child support purposes. The court found Petitioner to not be credible. The trial court heard testimony that Petitioner controlled an investment account at Morgan Stanley worth over $2 million and regularly made withdrawals from it to support his lifestyle. The trial court viewed with suspicion the fact that Petitioner stopped running his own business shortly after the Respondent's motion was filed, yet still maintained a lavish lifestyle with multiple unmortgaged properties and expensive cars. Furthermore, the court heard testimony and was presented with evidence that Petitioner had substantial assets comingled with his mother. The trial court was free to use Petitioner's nonemployment based income in calculating his child support obligation. In ordering Petitioner to pay $5,912.01 per month in child support, the trial court was following the guideline amount when Respondent filed her motion in 2008. While Petitioner later became unemployed, his lifestyle remained the same or even improved. Based on the testimony and evidence presented to the trial court, we find that the trial court did not abuse its discretion in ordering Petitioner to pay $5,912.01 per month in child support.

¶ 39 Because the trial court did not err in failing to address Respondent's income or the needs of the children in its order or err in averaging Petitioner's income, the order of the trial court granting Respondent's "Motion to Modify Child Support" is affirmed.

¶ 40 Next, Petitioner alleges that trial court abused its discretion when it ordered the creation of a trust pursuant to section 503(g).

¶ 41 Section 503(g) provides: "[t]he court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, physical and mental health, and general welfare of any minor, dependent, or incompetent child of the parties." 750 ILCS

5/503(g) (West 2012). A need for such protection arises when the noncustodial parent is either "unwilling or unable to make child support payments." *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 343 (2001). We review the decision to impose a trust under section 503(g) of the Illinois Marriage and Dissolution of Marriage Act under an abuse of discretion standard. *In re Marriage of Bates*, 141 Ill. App. 3d 566, 573 (1986).

¶ 42    The trial court did not abuse its discretion when it ordered the creation of a section 503(g) trust for the benefit of the parties' minor daughter. The evidence demonstrated a need to protect the interest of the parties' minor daughter. The court also heard evidence that Petitioner was planning to leave Illinois (and the United States) permanently and live his current lifestyle elsewhere. Petitioner's original child support obligation of $400 a month was set when the parties' children were extremely young. However, as the children grew, entered school, and began to participate in a variety of extracurricular activities, Petitioner has refused to provide more than $400 a month. The record demonstrates that Respondent paid for these activities as the children grew. Respondent also introduced evidence that Petitioner was currently failing to pay for his part of the parties' son's college education.

¶ 43    Moreover, based on Petitioner's actions during the course of the litigation, the court concluded there was a high likelihood Petitioner would not make the required child support payments. The record demonstrates that the trial court's concerns were correct. Petitioner never attempted to comply with the trial court's orders and was held in contempt for failing to make the new child support payments. The Petitioner failed to comply with the contempt order and the trial court was forced to issue a body attachment. Accordingly, we find that the trial court did not abuse its discretion in ordering the establishment of the section 503(g) trust.

¶ 44    Petitioner also argues that trust agreement lacks specificity and that the trial court erred in appointing the Respondent as trustee.

¶ 45    We find that Petitioner has waived review of this issue on appeal by failing to raise it with the trial court. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85 (issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal).

¶ 46    However, we note that the trial court failed to provide for the termination of the trust. Therefore, pursuant to our discretionary powers under Rule 366(a) (Ill. S Ct. R. 366(a) (eff. Feb. 1, 1994)), we modify that portion of the circuit court's order directing the creation of the trust as follows:

> "Upon attaining the age of eighteen (18), the trustee shall have full discretionary power to utilize the income and principal for the daughter's higher educational purposes. If daughter does not need the trust funds or wish to use the trust funds for higher educational purposes, the trust shall terminate upon the child attaining the age of twenty-one (21) and the remaining proceeds shall be distributed by the trustee to the Petitioner."

¶ 47    With the exception of the modification just stated, we find no abuse of discretion in the creation of the section 503(g) trust.

¶ 48    The last issue raised by Petitioner is whether the trial court erred in denying his motion for sanctions pursuant to Supreme Court Rule 219(c) and Supreme Court Rule 137. However, Petitioner does not address this issue and instead authors two pages calling Respondent a fraud and criticizing the trial court for awarding Respondent attorney fees. Accordingly, he has waived review of this issue as well. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 49                                  CONCLUSION

¶ 50     For the foregoing reasons, we affirm the trial court's order granting Respondent's "Motion to Increase Child Support."  We affirm the trial court's order establishing a section 503(g) trust, but modify the order as stated above.

¶ 51     Affirmed as modified.