536 A.2d 690

**Sue Ann GAY**

v.

**WILLIAM HILL MANOR, INC. et al.**

**No. 424, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 3, 1988.

Certiorari Denied May 31, 1988.

Matthew J. Kastantin (Martell, Donnelly, Gallagher and Kastantin on the brief) Rockville, for appellant.

Michael P. Broderick (Hugh E. Donovan on the brief) Silver Spring, for appellees.

Argued before GARRITY, ALPERT and ROSALYN B. BELL, JJ.

GARRITY, Judge.

The Circuit Court for Talbot County (North, J.) granted judgment notwithstanding the verdict against Sue Ann Gay, the appellant in this case, as to defamation.

## Facts

The appellant, Ms. Gay, had been employed as a nurse's aide at William Hill Manor, Inc., a nursing home, from December 16, 1981, until May of 1983. William Hill Manor, Inc. was named as appellee in this case along with the following individuals: Mrs. Esther Russell, the Administrator; Mr. Rodney Spring, the Assistant Administrator; and Ms. Gloria Edmiston, the Director of Nursing.

On May 24, 1983, Dorothy Withey, who was also a nurse's aide, reported to Ms. Edmiston that she had wit-

nessed a disturbing event. Ms. Withey revealed that on the evening of May 15th or 16th, she made patient rounds with Ms. Gay. When they entered Mrs. Ross' room, Mrs. Ross was "hollering." She then observed Ms. Gay take a pillow from under Mrs. Ross' head and lay it across her face. As she held the pillow over Mrs. Ross' face, Ms. Gay looked up at Ms. Withey and said, "You didn't see that." She then removed the pillow and placed it back under Mrs. Ross' head. Ms. Withey further related that she did not report the incident immediately because she was fearful.

After Ms. Edmiston spoke with Ms. Withey, Ms. Edmiston reported the alleged incident to Mrs. Russell, the Administrator. As required by the nursing home's policy, the alleged patient abuse was reported to Capt. Walter Chase of the local police department. Mrs. Russell testified that Capt. Chase investigated the incident and recommended that Ms. Gay be fired and notified in writing that she was not to enter upon the premises again. Capt. Chase testified that he believed that he had sufficient information to charge Ms. Gay with a criminal offense, although no charges were ever brought. On the following day, May 25, Ms. Edmiston requested that Ms. Gay report to her office. Upon Ms. Gay's arrival at the nursing home, she was escorted by Ms. Edmiston to Mrs. Russell's office. Mr. Spring was also present. The Assistant Administrator then advised Ms. Gay that he had been informed she had placed a pillow over Mrs. Ross' face. Although Ms. Gay asked the identity of her accuser, the staff refused to tell her. Ms. Gay was then given an employee report and told that her employment had been terminated.

The employee report set forth the reasons for Ms. Gay's dismissal: namely, physical mistreatment of a patient, excessive absenteeism and inciting disobedience to the rules and regulations of the facility. Ms. Gay was also given a letter at this time which advised her that she had been banned from the premises and that she would be "arrested for trespassing" if she were to come on the property.

After the meeting, Ms. Gay was escorted to her locker by Mrs. Russell, who preceded her; Mr. Spring, who followed her; and Ms. Edmiston, who was on her right. After emptying her locker, Ms. Gay was then escorted through the halls of the nursing home and to her car. There was testimony that indicated that a few residents and employees of the nursing home were in the rooms adjoining the hallway or in the hallway itself when Ms. Gay was being accompanied by her supervisors.

## Discussion of Law

In determining whether to grant a judgment notwithstanding the verdict, the trial judge must assume the truth of all credible evidence and draw all reasonable inferences therefrom in the light most favorable to the non-movant. *Stoskin v. Prensky,* 256 Md. 707, 262 A.2d 48 (1970); *McSlarrow v. Walker,* 56 Md.App. 151, 467 A.2d 196 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984). If the evidence presented does not allow reasonable minds to draw differing conclusions, then the question is one of law for the trial judge to decide. *Montgomery Ward Co. v. McFarland,* 21 Md.App. 501, 319 A.2d 824 (1974).

■ There are three elements which a plaintiff is required to show in order to establish a *prima facie* case of defamation:

First, the alleged defamatory statement or action must expose a person to "public scorn, hatred, contempt or ridicule" and thus injure reputation. Second, the alleged defamatory publication must be communicated to a third person and that person must reasonably recognize the publication to be defamatory. Third, damages must be proven. (citations omitted).

*Mareck v. Johns Hopkins University,* 60 Md.App. 217, 223, 482 A.2d 17, *cert. denied,* 302 Md. 288, 487 A.2d 292 (1984). In essence, in order to prove that one's reputation has been harmed, a person must show that the defamatory statement or action was published to a third party who must reasonably recognize its defamatory nature.

The appellant relies upon *General Motors Corporation v. Piskor*, 277 Md. 165, 352 A.2d 810 (1976), for the proposition that publication may be implied through certain conduct. In *Piskor*, the plaintiff was suspected of stealing inventory from the General Motors plant. Piskor was accosted and detained by defendant security guards as he attempted to leave the plant. The evidence presented at trial showed that Piskor was forcibly detained by four security guards who verbally abused him; that Piskor was questioned inside a glass-enclosed guard shack, which was in full view of the five thousand or so employees who were in the process of changing shifts; and that he was held for at least twenty-five to thirty minutes before he was released. Additionally, there was testimony that it was well known that anyone who was detained by the security guards was probably suspected of theft. It was also shown that employee traffic slowed as it passed the guard shack because the incident was unusual. The actions of the guards were held by the Court of Appeals to be a defamatory publication by conduct.

In another earlier case, *Great Atlantic and Pacific Tea Company, Inc. v. Paul*, 256 Md. 643, 261 A.2d 731 (1970), conduct in conjunction with an accusation of theft was found to constitute publication. In *Great Atlantic Tea*, the store manager accosted Paul and accused him of being a thief. Paul was frisked by the store manager and then grabbed by the arm and led to the manager's office at the front of the store. Although there was little or no testimony on how the accusations and conduct of the store manager had been perceived by third parties, the Court of Appeals pointed out that when slanderous remarks are made under certain circumstances, such that it is reasonable to assume that a third person would understand the remarks to be defamatory and directed at the plaintiff, a jury could infer that the element of publication had been satisfied.

We believe these cases to be readily distinguishable from the case *sub judice*. There was no testimony on behalf of Ms. Gay that being accompanied to her locker and then from the building was in any way unusual or even that

it was so perceived by other employees and residents of the nursing home. We do not believe that the mere act of an employer escorting an employee from the building after termination of employment, without more, constitutes a defamatory publication.

Subsequent to the termination of her employment, Ms. Gay filed a claim with the State Employment Security Administration for unemployment insurance benefits. As William Hill Manor, Inc., had been named as Ms. Gay's last employer, it was directed by the agency to relate why she no longer was working. The employer replied that Ms. Gay had been terminated for "violation of Patient Bill of Rights which the facility follows, physical mistreatment of a resident, inciting disobedience to rules and regulations of the facility, and unsatisfactory work performance and attitude."

▮ The appellant asserts that the report submitted by William Hill Manor, Inc., to the Employment Security Administration was a defamatory publication and that the report fell outside the scope of its qualified privilege. Pursuant to Md. Code Ann., Art. 95A, § 12(g)(3), an employer is required to submit a report to the Department of Employment and Training or its agents concerning the facts surrounding the separation of employment of any individual who leaves its employ. Unless such report or communication has been shown to be false and malicious, it may not be used as an underlying basis for a libel or slander suit. Art. 95A, § 12(g)(2), provides:

> No report, communication or any other such matter either oral or written from the employee or employer to each other or to the Executive Director of Board of Appeals or any of their agents, representatives or employees, which shall have been written, sent, delivered or made in connection with the requirements and administration of this article shall be made the subject matter or basis of any suit for slander or libel in any court, unless such report, communication, or other such matter is false and malicious.

As previously discussed, the record reflects that the appellee's Director of Nursing was advised by Ms. Withey that Ms. Gay had physically mistreated a resident of the facility, Ms. Ross. This information was communicated to the nursing home's administrator, Ms. Russell, who reported the alleged incident to Capt. Chase of the Easton Police Department. Upon his arrival at the nursing home, Capt. Chase attempted to interview Ms. Ross, but determined from her condition that she probably was not even aware of his presence. He then spoke to Ms. Withey who related the incident and further advised him of her fear of physical violence from Ms. Gay. He concluded, and so advised the nursing home authorities, that he believed he had sufficient evidence to place criminal charges against Ms. Gay.

Under the circumstances, we are unable to conclude that the employer's statement was submitted with malice. Thus, we hold that William Hill Manor, Inc., did not exceed the scope of its qualified privilege, and that the trial court, based upon its finding of lack of sufficient evidence, properly granted judgment n.o.v. on behalf of the appellees.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.