**James P. WATKINS, Jr., Plaintiff,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, LOCAL 2336 and The Chesapeake and Potomac Telephone Company, Defendants.**

**Civ. A. No. 86–1188.**

United States District Court, District of Columbia.

May 7, 1990.

---

James E. Maxfield, Washington, D.C., for plaintiff.

Jonathan Axelrod, Washington, D.C., for Local 2336.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This is a hybrid action by an employee against his employer for breach of contract and against his union local for breach of the duty of fair representation under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This matter now comes before the Court on motions by the employer and the union for summary judgment. Both defendants assert that plaintiff's suit is untimely under the six month limitations period of § 10(b) of the Act, 29 U.S.C. § 160(b). Furthermore, each defendant contends that it is entitled to judgment on the merits. For the reasons set forth below, the Court concludes that the motions must be denied.

## I.

Plaintiff James P. Watkins, Jr. was employed by defendant Chesapeake & Potomac Telephone Company ("C & P") from December, 1969 until his discharge on July 15, 1985 for misuse of company time. On that date, Watkins attended a meeting with two supervisory employees of C & P and a steward from Local 2336 of the Communications Workers of America ("the Union"). After being informed by C & P personnel that he would be terminated, Watkins requested the union steward to file a grievance with C & P in order to have the matter submitted to arbitration. The steward obtained a grievance number from C & P the next day.

The C & P supervisor responsible for hearing the grievance indicates that the Union steward requested no certain date for hearing the grievance and the company was not contacted by the Union until the thirty day limitation in the collective bargaining agreement ("the CBA") between C & P and the Union had expired. Affidavit of James C. Kinser, Jr. at 3, Exhibit to defendant C & P's Motion for Summary Judgment. The Union alleges that its steward, Sidney Tyson, and Watkins supervisor, James C. Kinser, discussed various tentative dates for hearing the grievance, but orally agreed to put off hearing the first step of the grievance for several weeks because "each would be away parts of the next few weeks." Defendant Local 2336's Memorandum in Support of Motion to Dismiss or in the alternative, for Summary Judgment at 8 ("Union Memorandum").

The parties agree that on August 21, 1985, the Treasurer of the Union arranged for a grievance hearing between plaintiff's supervisor and a second union steward to be held on August 26. The C & P supervisor asserts that he realized shortly after agreeing to hear the grievance on August 26 that more than thirty days had elapsed from the July 15 dismissal, and he states that he called the Union treasurer to notify him that the grievance was untimely and the company would not hear it. Kinser Affidavit, 3. The plaintiff contends that he arrived at the agreed site of the grievance hearing on August 26 only to be told that the meeting had been cancelled, and that the managers were in a meeting. Watkins Deposition at 53, filed October 3, 1986. The Union concurs on this point, and it asserts that it informed plaintiff on September 7, 1985 that the company would not hear the grievance.

The Union thereafter filed an unfair labor practice complaint with the National Labor Relations Board ("NLRB"), claiming that C & P had wrongfully refused to process the grievance filed on behalf of Watkins. On October 31, 1985, the NLRB informed the Union that it would not issue a complaint against C & P and that the Union could appeal the decision before November 13, 1985. Plaintiff contends that the Union told him that the NLRB action was designed to "make the company hear

[the] grievance." Plaintiff's Opposition at 12. The Union admits that it did not inform plaintiff of the result of the initial NLRB decision until around November 19, 1985, after the time allowed for appeal had expired. Union Memorandum at 10. Moreover, it also admits that at that time, the Union's local treasurer told plaintiff that it was still considering an appeal of the decision. *Id.*

## II.

■ Hybrid § 301 suits involve two separate but interdependent actions. In order for the employee to prevail he must (1) establish that the employer breached the collective bargaining agreement and (2) demonstrate that the union breached its duty of fair representation. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). It is well established that there is a six month limitation on hybrid actions against an employer for breach of contract and a union for breach of its duty of fair representation. *Id.* at 172, 103 S.Ct. at 2294. However, the Court in *DelCostello* was not called upon to determine when the six month period begins to run, and consequently, it did not do so.

■ Although hybrid suits against both the employer and the union under § 301 of the Act are separate actions, they accrue simultaneously. *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558, 1559 (11th Cir.1986). Thus, the timeliness of the action is generally measured from the later of (1) when the employee "discovers, or in the reasonable exercise of diligence should have discovered, the acts constituting the alleged [breach]" by the employer, *Howard v. Lockheed–Georgia,* 742 F.2d 612, 614 (11th Cir.1984), or (2) when the employee knows or should have known of the last action taken by the union which constituted the alleged breach of its duty of fair representation. *Galindo v. Stoody,* 793 F.2d 1502, 1509 (9th Cir.1986). *See also, Proudfoot,* 779 F.2d at 1559. Because here, as in *Proudfoot,* Watkins was discharged before the Union was called upon to process the employee's grievance, the timeliness of the suit turns upon the date when the fair representation claim accrued. The court in *Galindo* cautioned that the general rule set forth above is not always applied, and that "[a] reasoned analysis of the question when a duty of fair representation claim accrues must focus on the context in which the claim arose." 793 F.2d at 1509.

The Court in *Proudfoot* defined "final action" as indicating the "point at which the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Id.* The matter of when a cause of action accrues is normally a question of fact, *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881, 887 (11th Cir. 1985), and a dispute as to the timeliness of the suit generally precludes summary judgment, *Hill v. Georgia Power Co.,* 786 F.2d 1071, 1077 (11th Cir.1986); *Proudfoot,* 779 F.2d at 1559. In some circumstances, as the court in *Samples* noted, "knowledge of the union's last action can normally be attributed to the employee when his union notifies him of its decision not to pursue his claim any further, or when he should by use of normal diligence have realized that it had made such a decision." 755 F.2d at 887, n. 7.

C & P and the Union argue that the cause of action accrued, if at all, no later than September 7, 1985, when the Union informed plaintiff that C & P was unwilling to hear the grievance. It is undisputed that after meeting with Agnew on September 7, plaintiff knew that C & P refused to hear his grievance because the Union did not arrange for a hearing by August 15. Watkins Deposition at 56, filed October 3, 1986.[1] According to plaintiff, the Union told him at that time that C & P decided not to waive the time limits. *Id.* Plaintiff, however, asserts that he believed that the Union was still pursuing his grievance by way of the NLRB proceeding. He understood that the purpose of that proceeding was to force C & P to hear the grievance.

---

**1.** The Union had not set forth the reasons for C & P's refusal in its letter to plaintiff on September 5. *See* Exhibit 2 to Watkins Deposition, filed October 3, 1986.

Watkins Affidavit at 12, Plaintiff's Opposition Exhibit 1.

■ In the circumstances presented here, the Court concludes that the time of accrual should be the time when plaintiff knew or reasonably should have known that his grievance was finally resolved against him. Plaintiff has presented sufficient evidence to raise a genuine issue as to whether that time did not occur until he learned that the charge filed with the NLRB had been dismissed. While a charge with the NLRB presents a separate proceeding, the pendency of which would not by itself toll the time for filing a claim against the union, *see Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 335 (6th Cir. 1985), it is not beyond dispute that plaintiff should have known that the grievance process had ended. If plaintiff reasonably thought that the grievance process had not reached a final breakdown, and that his union might be able to force C & P to hear that grievance, his cause of action would not have accrued as of September 7, 1985.[2]

### III.

The Union additionally seeks to have the action dismissed on the ground that the local is not a signatory to the CBA, and consequently, there is neither jurisdiction under § 10 of the Labor Management Relations Act, nor a duty on it to provide fair representation to the plaintiff. In this respect, the local clearly misconstrues the applicability of the provisions of the Act. The Supreme Court, in *Complete Auto Transit v. Reis*, concluded that the Act "provides for collective bargaining agreements to be enforced 'against each of the parties thereto'". 451 U.S. 401, 408, 101 S.Ct. 1836, 1841, 68 L.Ed.2d 248 (1981). In its exposition of the legislative history of the Act, the Court relied upon Representative Case's explanation that the term "parties" was limited to the employer and "the recognized bargaining agent, rather than an individual." *Id.* at n. 7, *quoting* 92 Cong.Rec. 765 (1946).

■ It is undisputed that Article 12 of the General Agreement between C & P and the Communications Workers of America in force during the time period relevant to this action specifically recognizes chartered union locals as the agent for the Communication Workers of America in initially processing grievances. As a chartered and affiliated local of the national union, the local must be considered a "party" to the CBA within the meaning of § 10 of the Act.

### IV.

The Union also asserts that plaintiff has alleged nothing more than negligence against the Union, and that mere negligence is insufficient to support a claim for breach of the duty of fair representation. In his complaint, plaintiff alleges that the Union failed to properly prepare, file, and pursue his grievance, and also that this failure was a deliberate attempt to deprive plaintiff of his right to file a grievance. Complaint pars. 12 and 14. After a full opportunity for discovery, plaintiff has submitted no evidence to support his claim that the Union's actions were deliberate or in bad faith. Thus, the question here is whether any facts alleged and supported by plaintiff form the basis for a viable claim based upon arbitrary action by the Union.

■ Generally, to establish a breach of the duty of fair representation, an employee must show that the union's conduct was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Many courts have held that mere negligent conduct does not constitute a breach of the duty. *See, e.g., Galindo*, 793 F.2d at 1514; *Hoffman v. Lonza*, 658 F.2d 519, 523 (7th Cir.1981); *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211–12 (6th Cir. 1981).

■ The United States Court of Appeals for the Ninth Circuit has attempted to for-

---

**2.** The record does not support plaintiff's assertion that the Union misled him regarding their handling of his grievance, and that therefore, the limitations period should be equitably tolled.

mulate some standards for determining when a union's conduct rises to the level of arbitrariness. *See Galindo*, 793 F.2d at 1514. It has stated that "an act of omission by a union may be so egregious and unfair as to be arbitrary...." *Id., quoting Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir.1985); *see also NLRB v. Teamsters Local 282*, 740 F.2d 141, 147 (2d Cir.1984). The crucial elements for a claim of arbitrariness are that the union's error involved a ministerial rather than judgmental act, that there was no rational or proper basis for the union's conduct, and that the union's conduct prejudiced a strong interest of the employee. *Id.*

Here, plaintiff asserts that the Union acted arbitrarily in failing to set up a first-step grievance hearing within thirty days of filing the grievance. He argues that if the Union had obtained an extension of time to present the grievance, it wrongfully failed to act within the time allowed. If, on the other hand, the Union had not obtained an extension, plaintiff contends that it is guilty of bad faith in representing that it had. There is no dispute that plaintiff's interests in having his grievance heard were prejudiced because C & P determined that the Union failed to present plaintiff's grievance on time.

Plaintiff has met his initial burden under the standards of *Galindo* by showing a prejudicial failure by the Union to perform a procedural act.[3] However, the Union contends that its reliance upon C & P's past practice of waiving time limits provides a proper basis for its conduct and entitles it to judgment as a matter of law.

 If a union fails to timely pursue a grievance because of its reliance on a prevailing practice of freely granted extensions, it will not be liable for unfair representation. *Ruzicka*, 649 F.2d at 1211. There is no dispute that "C & P and Local 2336 have orally agreed to waive time limits in numerous cases and have reduced the extension agreement to writing only, if at all, at the end of the extension period."

Union's Statement of Facts Not in Dispute, par. 6. However, the Union has failed to submit evidence which shows that Tyson either had such an agreement here, or that he believed he had reached an agreement based upon past practice. Tyson has not been deposed in this case, and the Union has not submitted an affidavit from him. Furthermore, although the Union's answers to plaintiff's interrogatories state that Tyson was one of the people answering them, he did not sign the answers, and they cannot be treated as his sworn statements. Therefore, the Union has failed to meet the requirements of Fed.R.Civ.P. 56, and its motion for summary judgment on liability must be denied.

## V.

 C & P has also moved for summary judgment on the issue of whether it breached the CBA by discharging plaintiff without just cause. After reviewing the affidavits submitted by James C. Kinser and plaintiff, and drawing all inferences in plaintiff's favor, the Court concludes that there are genuine issues of material fact which preclude the entry of summary judgment on this question. Specifically, if plaintiff's allegations are true, there is a genuine issue as to whether he was led to believe that he could complete his assigned work on July 6, 1985. Although plaintiff's prior unsatisfactory performance was taken into account, it appears that C & P viewed the events of July 5 as the "final straw" when it decided to fire him.

In view of the above, it is hereby

ORDERED that the Chesapeake and Potomac Telephone Company's motion for summary judgment is denied; and it is further

ORDERED that Local 2336's motion to dismiss or for summary judgment is denied.

---

**3.** The Union appears to contend that any omission consisted of the failure to set up a first-step meeting within seven days of July 16, at which time it presented the grievance. It appears that

C & P's position is that the Union did not actually present the grievance on July 16, and that it failed to do so within thirty days of the firing.