**Shirley BROWN, Plaintiff,**

v.

**GINO MORENA ENTERPRISES and United Food & Commercial Workers Union Chartered by UFCW AFL—CIO, CLC Local 400, Defendants.**

**No. Civ.A. 96–53 SSH.**

United States District Court, District of Columbia.

March 26, 1999.

---

Lloyd Felix Ukwu, Washington, DC, Victor Mba–Jones, Mba–Jonas & Associates, Langley Park, MD, for plaintiff.

Deirdre R. Horton, John A. King, King & Attridge, Rockville, MD, for Gino Morena Enter., defendant.

Carey R. Butsavage, Butsavage & Associates, Washington, DC, for United Food, defendant.

1. The Court notes that the motion for summary judgment was submitted by defendant Gino Morena Enterprises. Codefendant United Food & Commercial Workers Union, Local 400, subsequently filed a statement in support of the motion for summary judgment. The Court treats the motion for summary judgment as if it had been jointly filed by both defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 and related pleadings.[1] Upon careful consideration, summary judgment is granted in favor of defendants on plaintiff's claim pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and plaintiff's pendent state law claims for defamation are dismissed without prejudice. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

### Background

Plaintiff, Shirley Brown, was employed by defendant, Gino Morena Enterprises ("Morena") as a beautician at its Boiling Air Force Base location from 1989 until she was terminated on May 5, 1995. Plaintiff's employment, at the time of her termination, was subject to a collective bargaining agreement dated September 24, 1993. The agreement was between defendant Morena and the United Food & Commercial Workers Union, Local 400 ("Local 400"). It specified that Local 400 was the exclusive bargaining representative of defendant Morena's employees at Boiling Air Force Base.

Plaintiff orally protested her discharge to the union, and in May of 1995, the union's representative, Glenda Spencer, filed a grievance with defendant Morena on plaintiff's behalf. Defendant Morena offered plaintiff substitute employment as

Furthermore, plaintiff requested that the Court deny Local 400's May 8, 1998, motion for leave to file a reply to plaintiff's opposition to defendants' summary judgment motion. The Court denies this request as moot because the Court's May 8, 1998, Order explicitly authorized Local 400 to file such a reply, and because Local 400 accordingly withdrew its motion on May 18, 1998.

a beautician at Andrews Air Force Base on May 19, 1995. Plaintiff rejected this offer.

On June 22, 1995, plaintiff was advised that the union had instructed the Director of Member Services and the union representative to arbitrate her case. On June 28, 1995, the union filed a Demand for Arbitration with the American Arbitration Association. In August of 1995, the union secured an offer of reinstatement for plaintiff to her former position at Boiling Air Force Base and back pay for her three-day suspension and for the period between her termination and the date on which she was offered substitute employment ("settlement offer"). Plaintiff did not accept the offer.

On September 20, 1995, Michael R. Earman, of the union, provided plaintiff with a written explanation of the union's position that arbitration of her grievance was not merited. On October 3, 1995, plaintiff's counsel requested an extension of time to respond to the settlement offer. On November 2, 1995, the August 1995 settlement offer was renewed and held open until November 15, 1995. Plaintiff again chose not to accept the offer.

■ Plaintiff filed the instant complaint on January 17, 1996. She brings this "hybrid" action pursuant to § 301 of the Labor Management Relations Act (" § 301"), 29 U.S.C. § 185.[2] She alleges wrongful discharge by defendant Morena, her former employer, and breach of the duty of fair representation on the part of Local 400. Plaintiff also contends that conduct taken by defendant Morena supports two pendent state law claims for defamation.

*Legal Standards*

A. *§ 301 of the Labor Management Relations Act*

■ The circumstances under which an employee may litigate an alleged breach of

contract by an employer where the relationship between the employer and employee is governed by a collective bargaining agreement are limited. "Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance." *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Furthermore, any pendent claims by such an employee are preempted by § 301 if the application of state law requires the interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

■ In determining whether an employee has asserted a viable § 301 action, the Court must initially determine the threshold issue of whether a bargaining representative has breached its duty of fair representation. The union's status as its member's exclusive bargaining agent includes an obligation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Accordingly, a breach of this duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. 903.

■ "Because ... the very nature of collective bargaining requires an agent to

---

**2.** A hybrid action is one in which an employee, who is bound by arbitration procedures in a collective bargaining agreement, may sue both the employer and the union for the employer's violation of a collective bargaining agreement, as long as the union is alleged to have breached its duty of fair representation. *O'Hara v. District No. 1-PCD, MEBA, AFL—CIO,* 56 F.3d 1514, 1520 (D.C.Cir.1995).

balance interests that quite often are contradictory, *see, e.g., Humphrey v. Moore,* 375 U.S. 335, 349–50, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), it is clear that 'a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents.' " *Caudle v. Pan American World Airways, Inc.,* 676 F.Supp. 314, 317 (D.D.C.1987) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). "[A] union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settle[s][a] grievance short of arbitration." *Vaca,* 386 U.S. at 192, 87 S.Ct. 903. Furthermore, the union's settlement of a grievance does not constitute a breach of the duty of fair representation simply because the union does not obtain the full relief sought or because the affected union member is not satisfied with the terms of the settlement. *Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1061 (9th Cir.1989) (union did not breach its duty of fair representation when it accepted "a settlement which gave the employees reinstatement, back pay (less one month), and a return to seniority ....."); *Scott v. Machinists Automotive Trades Dist. Lodge No. 190 of N. Cal.,* 827 F.2d 589, 593 (9th Cir.1987) (union did not breach its duty of fair representation when it settled a grievance for back pay less eight days pay because it thought that was a reasonable settlement); *Dukes v. Bethlehem Steel Corp.,* 677 F.Supp. 390, 397 (D.Md.1987) (union did not breach duty of fair representation when it accepted what plaintiff considered to be "an unreasonably low settlement figure"); *Ross v. Runyon,* 156 F.R.D. 150, 156 (S.D.Tex.1994) (union did not breach duty of fair representation by settling discharge grievance by agreeing to 30–day suspension); *Slavich v. UAW, Local 551,* 1991 WL 353368 (N.D.Ill. 1991) (union did not breach duty of fair representation when it settled a discharge grievance waiving back pay for the period employee received partial unemployment compensation and agreeing to a new 12-month probationary period). Nor does mere negligence does constitute a breach of the duty of fair representation. *See Barr v. United Parcel Service,* 868 F.2d 36, 43 (2d Cir.1989); *Scott,* 827 F.2d at 594; *Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981); *Watkins v. Communications Workers of America, Local 2336,* 736 F.Supp. 1156, 1160 (D.D.C. 1990). *Cf. International Brotherhood of Teamsters v. NLRB,* 587 F.2d 1176, 1181 (D.C.Cir.1978). As indicated above, the union does not breach its duty of fair representation unless its conduct is arbitrary, discriminatory, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. 903.

## B. *Summary Judgment Standard*

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, all evidence and inferences must be viewed in a fight most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must be wary of granting summary judgment in actions asserting a breach of the duty of fair representation because such decisions generally require the Court to probe the intent and state of mind of the bargaining agent to determine whether its actions were discriminatory, arbitrary, or in bad faith. *Caudle,* 676 F.Supp. at 318. Nonetheless, in order to survive a motion for summary judgment, plaintiff must offer concrete evidence regarding the bargaining agent's

state of mind and cannot simply rely on conclusory allegations regarding intent. *Id.* Furthermore, when relying on the result of the bargaining agent's negotiations to establish a breach of the duty of fair representation rather than upon any direct evidence of hostility or arbitrariness, the bargaining agent's wide discretion in conducting negotiations must be considered. "Any substantive examination of a union's performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). "[T]he final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Id.* (internal citation and quotation omitted). Accordingly, where plaintiff has failed to offer concrete evidence of the necessary state of mind by the bargaining agent, summary judgment is appropriate.

### Analysis

#### A. § 301 Claim—Breach of the Duty of Fair Representation by Local 400

Plaintiff asserts that Local 400 breached its duty of fair representation by failing to take her claim to the only stage of the grievance procedure—arbitration—which she contends would have fully protected her rights against her employer, defendant Morena. Although conceding that an employee has no absolute right to arbitration, plaintiff asserts that Local 400 refused to take her claim to arbitration because it was involved in a conspiracy with defendant Morena to prevent her from successfully challenging her termination rather than because of any reason consistent with its duty of fair representation.[3] She alleges that Local 400 involved itself in such a conspiracy because of its hostility towards her for her role as a union steward.[4] In support of her contention that Local 400's decision not to proceed to arbitration on her grievance was based upon hostility towards her rather than upon any legitimate rationale, plaintiff relies almost entirely on the alleged inadequacies of the settlement offer negotiated by Local 400.

Local 400 asserts that it decided not to proceed to arbitration because it believed that defendant Morena's settlement offer of reinstatement to her original position and back pay for a three-day suspension and for the period between her termination and the offer of substitute employment was the best result she could realistically expect to obtain through arbitration and that proceeding to arbitration under those circumstances would simply have been a waste of union resources. Plaintiff contends that the settlement offer was fatally flawed because it did not provide back pay for the period following her rejection of a position at Andrews Air Force Base, compensation for lost profits or clientele, explicit acknowledgment that her seniority rights and other job benefits would be restored, or pay for accrued vacation time.[5] In light of the settlement

---

**3.** In her complaint, plaintiff also asserts that Local 400's encouragement that she accept defendant Morena's settlement offer was based on an attempt to cover up their negligence in allowing the time to invoke arbitration to pass rather than upon any legitimate ground. However, the Court does not address that argument because the record unequivocally establishes that such a demand was timely made.

**4.** The Court notes that plaintiff provides no reason why her position or conduct as a shop steward on behalf of union members would provoke such hostility by the union.

**5.** The Court does not analyze plaintiff's claim for emotional and reputational damages allegedly caused by her escort off of her employer's premises by the military police in this section because plaintiff has unambiguously stated that she intends to assert this claim as an "independent 'pendent' claim" to her § 301 claim. However, the Court notes that—if it were to treat these allegations as part of the § 301 claim—it would find persua-

offer's supposed inadequacies, plaintiff contends that Local 400's decision not to pursue arbitration could not have been based upon its honest belief that she could obtain no better results at arbitration.

■ Local 400 contends that its determination regarding the futility of proceeding to arbitration was based upon its belief that plaintiff's refusal of defendant Morena's offer of substitute employment at Andrews Air Force Base almost certainly would have been interpreted by an arbitrator as a failure to mitigate damages. Local 400 asserts that it reasonably believed that such a failure to mitigate would have resulted in the arbitrator's limitation of plaintiff's back pay to the period between her termination and her rejection of defendants' offer of substitute employment. *See, e.g., District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C.1982) ("If the employee has obtained a substitute job or could obtain one by reasonable effort, he is chargeable with the income he obtains or reasonably could obtain in this fashion. . . .") (internal quotation omitted); *Love Bros.*, 45 Lab.Arb.Rep. (BNA) 751, 752 (Nov. 16, 1965) ("If as a result of the employee's action or inaction, he has failed to mitigate the loss, then to the degree of such failure he is himself partially responsible."). Plaintiff counters that she had no obligation to accept defendant Morena's offer of substitute employment, in that the job which she was offered was not comparable to her prior position because it was subject to a separate collective bargaining agreement, and because of its location, lower pay scale, and inaccessibility to her clients. Furthermore, plaintiff contends

that she believed the Andrews job offer to be a final resolution of her grievance rather than an offer of substitute employment pending further action regarding her grievance. In sum, plaintiff contends that Local 400 misjudged the effect of her rejection of the Andrews job on any potential award by an arbitrator.[6]

■ In order to constitute evidence of a breach of the duty of fair representation, Local 400's belief that plaintiff was unlikely to receive more back pay through arbitration than through the settlement offer would have had to be so unreasonable as to be "wholly irrational or arbitrary." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 78, 111 S.Ct. 1127. Although the substitute job offered by defendant Morena was not identical to plaintiff's prior position, Local 400's conclusion that any possible award of back pay would be severely limited by plaintiff's failure to mitigate damages cannot be characterized as wholly irrational or arbitrary. Even assuming that Local 400 misjudged whether the arbitrator actually would have concluded that plaintiff failed to mitigate damages or miscalculated the precise amount by which the arbitrator might reduce plaintiff's back pay for her failure to mitigate damages, such a mistake would at most constitute negligence which is not a sufficient basis on which to establish a breach of the duty of fair representation. *See Scott,* 827 F.2d at 593; *Barr,* 868 F.2d at 43. *Cf. International Brotherhood of Teamsters,* 587 F.2d at 1181.

Furthermore, the Court notes that even had no substitute position ever been offered or had plaintiff's rejection of the

---

sive defendants' argument that Local 400 could reasonably have believed that an arbitrator would not have granted plaintiff any relief on her claims stemming from the police escort and would conclude that Local 400 had not breached its duty of fair representation.

6. To the extent that plaintiff asserts that Local 400 breached its duty of fair representation to her by merely procuring the Andrews job offer and encouraging her to accept it, the Court rejects her argument. Plaintiff' claim

is based upon her assertion that the union unlawfully failed to proceed to arbitration on her grievance. As noted by defendants, Local 400 filed a demand for arbitration following plaintiff's rejection of the Andrews job and only withdrew that demand after plaintiff failed to accept defendant Morena's August settlement offer. Therefore, any claim plaintiff has regarding Local 400's decision not to proceed to arbitration stems from Local 400's conduct following her rejection of the August settlement offer.

Andrews position been completely justified, the union could have concluded reasonably that plaintiff was unlikely to receive back pay in excess of that provided by the August settlement offer. In fight of plaintiff's apparent failure to file for unemployment benefits or to provide Local 400 with information regarding any substitute employment obtained on her own, Local 400 could reasonably have believed—based upon the information available to it at the time it represented plaintiff—that an arbitrator would conclude that she had failed to mitigate damages and would therefore have denied or restricted any award of back pay. *See Air Line Pilots Ass'n, Int'l,* 499 U.S. at 67, 111 S.Ct. 1127 (holding that the bargaining representative's conduct must be judged "in light of the factual and legal landscape at the time of the union's actions...."). Accordingly, the Court concludes that Local 400's decision not to proceed to arbitration to obtain additional back pay does not provide evidence of a breach of the duty of fair representation.

Plaintiff also contends that other aspects of defendant Morena's settlement offer were so inadequate that plaintiff's rejection of it could not have formed a reasonable basis for Local 400's decision not to pursue arbitration. She asserts that the settlement offer was flawed because, although it provided for reinstatement, it did not explicitly address whether her previous level of seniority and other benefits would be restored. Plaintiff argues that this omission, in conjunction with the presence of a clause waiving plaintiff's rights to file suit against defendant Morena for claims stemming from her termination, rendered the settlement offer utterly unacceptable. However, the Court notes that plaintiff has made no allegation or argument or provided any evidence that Local 400 knew or should have known that "reinstatement" to plaintiff's prior position would not have included the reinstatement of such standard job benefits or conditions. Accordingly, in the absence of any reason to believe that defendant Morena intended to strip plaintiff of her seniority or other benefits or any reason why Local 400 should have imputed such an intent to defendant Morena, the Court concludes that Local 400's belief that the settlement offer was adequate cannot be characterized as unreasonable, much less so unreasonable as to be considered "wholly irrational or arbitrary."[7] Considering the

---

7. The Court notes that plaintiff asserts that she was damaged by defendant Morena's failure to pay her accrued vacation pay. However, her characterization of this claim is inconsistent and ill-defined. At some points she seems to assert that the omission of a provision in the settlement offer assuring payment of vacation pay rendered the settlement offer so unacceptable that the union's failure to proceed to arbitration constituted a breach of its duty of fair representation. To the extent that plaintiff makes this claim, the Court concludes that the above analysis regarding plaintiff's failure to provide any reason to believe that Local 400 knew or should have known that reinstatement to her prior position would not include the restoration of standard job benefits applies. In light of the foregoing, it is clear that the union's conduct in relation to plaintiff's vacation pay claim cannot be considered to constitute a breach of its duty of fair representation.

To the extent that plaintiff contends that a separate grievance regarding the vacation pay issue should have been processed by the union and that its failure to do so constituted a breach of its duty of fair representation, the Court notes that plaintiff has not established that she ever explicitly informed Local 400 of any dispute over vacation pay or that she filed a grievance regarding that issue. Accordingly, the Court concludes that Local 400 could hardly be found to have breached its duty of fair representation in regard to its alleged failure to process a nonexistent grievance or complaint and that a § 301 claim would therefore be barred.

Plaintiff also suggests that the payment of vacation pay to a terminated employee may not be governed by the collective bargaining agreement and, thus, may be treated as a pendent claim (presumably for breach of contract) to the § 301 claim analyzed above. However, § 301 preempts state law claims whose resolution depends upon the interpretation of the terms of a collective bargaining agreement. *See Lingle,* 486 U.S. at 413, 108 S.Ct. 1877. Plaintiff's entitlement to such pay clearly depends upon the interpretation of several provisions of the parties' collective

foregoing, the Court concludes as a matter of law that Local 400's decision to forgo arbitration does not constitute evidence of a breach of the duty of fair representation.

■ In the absence of such evidence, plaintiff's contention that Local 400 breached its duty of fair representation rests only upon her allegation of a single instance in which a union official acted in a "hostile" manner. Plaintiff contends that union official James Hoffman expressed his hostility towards her by angrily exiting a meeting during which the settlement of her grievance was being discussed. However, plaintiff's own deposition indicates that Hoffman's understandable frustration resulted not from any personal hostility towards her stemming from her status as a union steward but from her refusal to accept the August settlement agreement (which the Court has already concluded represented a reasonable offer) and her insistence upon proceeding to arbitration.[8] The Court concludes that a reasonable jury could not conclude based upon this evidence that Local 400 breached its duty of fair representation by deciding not to take plaintiff's action to arbitration because of an illegitimate bias against her. Accordingly, the Court concludes that plaintiff has failed to assert a viable § 301 claim and the Court grants summary judgment in favor of defendants on that claim.

### B. Defamation Claim

#### 1. Preemption by § 301

Plaintiff also asserts two state law claims for defamation stemming from defendant Morena's decision to have plaintiff escorted off of its premises by the police. Noting that § 301 preempts any state law claim whose resolution depends upon the interpretation of a collective bargaining agreement, defendants contend that any damages stemming from plaintiff's termination must be pursued as a part of plaintiff's § 301 claim and do not constitute a separate pendent claim. See Lingle, 486 U.S. at 413, 108 S.Ct. 1877. However, even assuming that plaintiff's defamation claim was not preempted by § 301, defendants argue that summary judgment should be entered in their favor because plaintiff as a matter of law has to establish defamation.

Due to plaintiff's inartfully drafted complaint and subsequent pleadings, it is difficult to discern exactly what claim plaintiff intends to assert. Plaintiff's complaint simply lists conduct to which she objects, without defining specific legal claims. The complaint states: (1) that defendant Morena "out of spite in a deliberate attempt to

---

bargaining agreement which govern the terms under which vacation pay is earned. Accordingly, the Court concludes that plaintiff's allegations regarding vacation pay may not be considered as a pendent claim.

8. The following exchange took place during plaintiff's deposition:

Q: And do you know why he got angry?
A: He just felt like it was—he just left. He just got mad, got mad at what I said.
Q: Do you remember what you said?
A: I said are we going to arbitration or not.
Q: And someone said the union was not going to, right?
A: No. Not someone said.
Q: Who said?
A: Mr.—Jim Hoffman had said and then Jim—Mike Earman said—he is the one who said why should we spend the union members' money.

Q: Right. And had they explained that the settlement was all they would get in an arbitration? Is that what frustrated Mr. Hoffman, when you wouldn't accept that explanation and and accept the settlement?
A: I don't know what frustrated him. I don't know.
Q: And as far as you remember, the only thing that happened before he got angry and walked out of the meeting was that you didn't understand why the union was not going to arbitrate?
A: As far as I know, that's the reason why—I guess that's the reason why.
Q: [D]id you or did you not accept the offer that Gino Morena that [sic] was making and you were told about in this meeting? Did you accept it or reject it?
A: Well, I didn't accept it.
Plaintiff's Deposition, 494–95.

humiliate the plaintiff called the military police to escort the plaintiff of [sic] Andrew's Air force [*sic*] Base ... even though there was no hostile exchange between the plaintiff and the manager whatsoever;" (2) that the military police told her that "they were there to escort a terminated unruly employee off of the military base ... [s]uch was the first time the plaintiff wa [sic] aware of the fact that she has [sic] been terminated;" and (3) that "the actions alleged ... was [sic] a deliberate and malicious effort on the part of management to injure the reputation of the plaintiff in the hair dressing community, more especially in the military community." Compl. ¶¶ 21–23. In her opposition to defendants' motion for summary judgment, she treats these allegations as if they were subsumed by her § 301 action for breach of fiduciary duty by characterizing the settlement offer as defective because it failed to compensate her for alleged damages stemming from the police escort or to reserve her rights to sue for these damages at a later date. These asserted damages, plaintiff contends, arise from a panoply of legal claims—apparently including wrongful discharge, intentional infliction of emotional distress, and defamation—which plaintiff suggests an arbitrator could have recognized.

However, on page four of her memorandum of points and authorities supporting Plaintiff's Supplemental Motion in Opposition to Summary Judgment, plaintiff asserts that her "allegation of defamation, slander and maliciousness in plaintiff's treatment in calling the military police on the plaintiff for no justifiable reason" does not "fall under the collective bargaining agreement and should therefore proceed against Geno Morena as an independent 'pendent' claim." In light of this definitive statement that she is not asserting this allegation as a part of her claim that the union's treatment of her termination griev-

ance breached its duty of fair representation, the Court disregards plaintiff's previous arguments (made in her opposition to defendants' motion for summary judgment) relating to the nature of the "damages" for which Local 400 allegedly failed to procure compensation on her behalf or the litigation rights which it failed to protect. The only legal characterization which plaintiff has given to her supposedly pendent claims regarding the police escort is made in her supplemental opposition to summary judgment, where she titles the section relating to these claims "Defamation." The Court adopts plaintiff's characterization of her claim as one for defamation and notes that the only defendant to these claims is defendant Morena.[9]

■ Accordingly, the Court must first determine whether plaintiff's claims for defamation are indeed pendent claims or whether they are preempted by § 301. As noted above, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." *Lingle*, 486 U.S. at 406, 108 S.Ct. 1877. However, " § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those fights does not depend upon the interpretation of such agreements." *Id.* at 409, 108 S.Ct. 1877. "In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Ibid.*

9. The Court notes, however, that even were the Court to construe plaintiff's claim more broadly, it would find defendants' arguments persuasive and would grant summary judgment in their favor. The challenged conduct asserted by plaintiff would be insufficient to support any of the potential causes of action.

In *Lingle*, the Supreme Court concluded that a state law tort claim asserting retaliatory discharge for the filing of a worker's compensation claim was not preempted by § 301 even though a collective bargaining agreement required that employees be terminated only for just cause. The Court noted that the state tort required that the employee show that he was discharged and that the employer's motive was to deter the employee from exercising fights under the Workers' Compensation Act or to interfere with the exercise of those fights. The Court concluded that neither of these elements required the interpretation of any term of the collective bargaining agreement despite the likelihood that the Court's factual inquiry into whether the employer had a nonretaliatory reason for the discharge might closely parallel the Court's factual consideration regarding the existence of just cause for termination pursuant to the collective bargaining agreement.

Accordingly, the Court first examines the elements of a defamation claim to determine whether the viability of the state law claim rests upon the interpretation of any term of the collective bargaining agreement. Defendant Morena contends—and plaintiff does not contest—that in order to prove defamation, plaintiff must establish that the challenged statement or action was false, defamatory, and published with some degree of fault. *Washington v. State Farm*, 629 A.2d 24, 26 (D.C.1993). Plaintiff asserts that defendant Morena's act of having her escorted off its premises by military police at her termination in the presence of customers, coworkers, and others constitutes defamation because the mere presence of a police escort suggested to those present that she had done something unlawful or was creating a disruption. The question of whether such an impression was falsely given to those observing her departure and whether defendant Morena bore any fault for the creation of such an impression may be evaluated independently from the question of whether plaintiff's termination was justi-fied pursuant to the collective bargaining agreement.

Plaintiff may also intend to assert that defendant Morena's alleged communication to the military police that she was being disruptive constituted a separate defamatory act. Again, the relevant questions under the defamation analysis—whether the alleged communication was false, defamatory, or published with some degree of fault or whether such statements to police officers were privileged—can be answered without reference to the collective bargaining agreement. Accordingly, the Court concludes that plaintiff's state law claims for defamation are not preempted by § 301.

### 2. *Pendent Jurisdiction*

■ The Court next considers whether it should exercise pendent jurisdiction over plaintiff's state law claim. "When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise pendent, or supplemental, jurisdiction over related claims under state law." *Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 920 (D.C.Cir.1996), *cert. denied*, 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997). In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court articulated a two-part test to determine when the assertion of such jurisdiction is appropriate. The district court must first determine whether the state and federal claims "derive from a common nucleus of operative fact" so that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* If so, the court has the power, under Article III of the Constitution, to hear the state claim. *Id.* at 726, 86 S.Ct. 1130. The Court concludes that plaintiff's federal and state law claims do present a common nucleus of operative fact and that the Court has the power to exert supplemental jurisdiction.

However, the assertion of supplemental jurisdiction is a discretionary power which need not be exercised when dismissal of the pendent state claims will better serve the interests of judicial economy, convenience, and fairness to the litigants. *Ibid.* In 1990, Congress enacted 28 U.S.C. § 1367, which articulates factors which the district court should consider in its determination of whether to exercise its discretion to decline supplemental jurisdiction over a state law claim. The relevant provision states:

■ (c) The district courts may decline to exercise supplemental jurisdiction over a claim . . . if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367. This Circuit has concluded that the supplemental jurisdiction statute essentially codifies pre-existing case law and does not restrict the district court's discretion to decline to exercise supplemental jurisdiction. *See Women Prisoners of the District of Columbia Dep't of Corrections,* 93 F.3d at 921.

■ Two of the factors listed above militate against this Court's exercise of pendent jurisdiction over this claim. The Court has granted summary judgment in favor of defendants on the § 301 claim, which is the only claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 769 (D.C.Cir.1982) ("If the federal claim in a case are resolved before trial, the District Court retains power to decide the state claims, but may exercise its discre-

tion to dismiss them without prejudice."). Accordingly, if this action proceeded, the Court's sole function would be to apply state law. However, the Court notes that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1266 (D.C.Cir.1995) (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130).

Furthermore, plaintiff's action raises a novel question of state law—whether the mere escort of a terminated employee off an employer's premises constitutes a defamatory act. *See* 28 U.S.C. § 1367(c)(1). Although the District of Columbia has not yet addressed this issue, several jurisdictions have concluded that such conduct is not sufficient to support a claim of defamation. *See, e.g., Bolton v. Department of Human Services,* 540 N.W.2d 523, 526 (Minn.1995) ("[W]here there is no word spoken or conduct other than a simple escorting of the [employee] to the exit door upon his termination, we conclude that as a matter of law [the employee] was not defamed."); *Davis v. John Crane, Inc.,* 261 Ill.App.3d 419, 199 Ill.Dec. 133, 633 N.E.2d 929, 938 (1994) (concluding that an employee's escort off the employer's premises by security guards was reasonably susceptible to innocent interpretation and thus did not constitute defamation); *Gay v. William Hill Manor, Inc.,* 74 Md.App. 51, 536 A.2d 690, 693 (Md.Ct.Spec.App.1988) ("[T]he mere act of an employer escorting an employee from the building after termination of employment, without more, [does not] constitute[ ] a defamatory publication."). Furthermore, in determining whether such conduct should support a claim for defamation, a court might well consider the policy implications of subjecting an employer to liability for taking the precautionary action of calling the police to avoid possible disruption by a terminated employee. *See Tynes v. Shoney's Inc.,* 867 F.Supp. 330, 334 n. 4 (D.Md.1994) ("It would be ex-

tremely unsound as a matter of public policy to subject the owner of the establishment to civil liability every time the police are called to prevent a conflagration from erupting."). The application of state law in light of such public policy considerations is certainly best made by a state court. Accordingly, in light of the preference for having state courts apply state law and the lack of any gain to judicial economy by the retention of these claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for defamation and dismisses them without prejudice.

## CONCLUSION

The Court grants summary judgment in favor of defendants on plaintiff's § 301 claim because plaintiff has failed to establish that a genuine issue of material fact exists as to whether Local 400 breached its duty of fair representation. Although the Court concludes that plaintiff's defamation claims are not preempted by § 301, it declines to exercise its discretion to exert supplemental jurisdiction over those state law claims and dismisses them without prejudice. An appropriate Judgment accompanies this Opinion.

## JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendants' motion for summary judgment is granted as it relates to plaintiff's § 301 claim and judgment is entered in favor of defendants on that count. It hereby further is

ORDERED, that plaintiff's defamation claims are dismissed without prejudice.

SO ORDERED.